United States Court of Appeals,

Fifth Circuit.

Nos. 92-5013, 92-5014.

PACIFIC GAS TRANSMISSION CO., Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Aug. 26, 1993.

Petitions for Review of an Order of the Federal Energy Regulatory Commission.

Before REYNALDO G. GARZA, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Pacific Gas Transmission Company ("PGT") petitions for review of the Federal Energy Regulatory Commission's (the "Commission's" or "FERC's") orders amending Kern River Gas Transmission Company's ("Kern River's") and Mojave Pipeline Company's ("Mojave's") optional certificates of public convenience and necessity and denying PGT's application for rehearing. Because we find that the Commission's actions were neither arbitrary nor capricious and that the Commission did not abuse its discretion in amending the certificates and denying PGT's motion for rehearing, we affirm.

I.

On January 24, 1990, Kern River and Mojave received authorizations under the Commission's optional certificate procedure jointly and individually to construct, own, and operate new pipeline facilities in order to transport natural gas into south-central California.[1] The certificated cost of Kern

---

[1] In order to obtain authorization for a new pipeline venture from the Commission, a natural gas company first must obtain a certificate of public convenience and necessity from the Commission pursuant to § 7(c) of the Natural Gas Act ("NGA"), which provides in pertinent part as follows:

> No natural gas company ... shall engage in the transportation or sale of natural gas, ... or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations....

River's facilities was $631,329,000, and the certificated cost of Mojave's facilities was $109,332,000. The certificated cost of the common facilities was $204,010,000. Kern River's share of this cost was $129,825,000, and Mojave's share was $74,185,000. The companies based these figures upon 1989 estimates of total costs.

Based upon these cost figures, the Commission approved maximum reservation fees for both Kern River and Mojave, which the Commission set forth in its certificate order. 50 FERC ¶ 61,069, 1990 WL 488664 *reh'g denied,* 51 FERC ¶ 61,195, 1990 WL 488742 (1990).[2] For the first

---

15 U.S.C. § 717f(c)(1)(A) (1993).

A company may elect to obtain one of two types of certificates. First, it may obtain a conventional or standard § 7 certificate. The Commission requires companies that wish to obtain a standard certificate to meet rigorous requirements, and the application process is slow and costly. An applicant must demonstrate that it has contracts and supporting market data equivalent to the total capacity of its proposed facilities and must present evidence of adequate gas supply. *See* NGA section 7(e), 15 U.S.C. § 717f(e) (1993) (certificate will be granted only if proposed service, sale, operation, construction, extension, or acquisition, to extent authorized by the certificate, is or will be required by present or future public convenience and necessity; otherwise, application will be denied).

Alternatively, a company may obtain an optional certificate pursuant to Part 157, Subpart E of the Commission's regulations, 18 C.F.R. §§ 157.100-.106 (1992). Under optional certificate procedures, the Commission does not require applicants to demonstrate that markets or gas supplies for their new projects exist. *See* 18 C.F.R. § 157.102(b)(1)(iii) (1992) (exhibits detailing total gas supply, market data and tariff rates not required in optional certificate proceedings); 18 C.F.R. § 157.104(c) (1992) (if application for optional certificate complies fully with outlined requirements, the Commission will presume that proposed new service is or will be required by present or future public convenience and necessity).

In exchange for the streamlined procedures and less burdensome requirements for optional certificates, applicants must specifically agree to assume the economic risks of the project. *See* 18 C.F.R. § 157.103(d)(8) (1992) (describing prohibitions against cost shifting). The Commission reasons that as long as the applicant bears the risk of a new pipeline project, the Commission may infer that the applicant will build its facilities on an efficient scale and that the project will advance the public interest. The applicant's agreement is embodied in the specific terms and conditions under which the optional certificate is offered.

[2]A reservation fee applies regardless of the quantity of gas shipped to the customer, whereas a usage fee applies to each unit of gas shipped. The reservation fee therefore guarantees that the pipeline company will recover some of its costs regardless of the customer's actual use of the pipeline or the volume of gas taken. In issuing optional certificates, the Commission caps the amount of costs that a pipeline company may recover through its reservation fee but permits the company to recover the remainder of its costs through a usage fee. *See* 18 C.F.R. § 157.103(d)(3) (1992) (describing volumetric rates) and (d)(7) (discussing rate flexibility).

fifteen-year period of service, the Commission approved a maximum monthly reservation fee of $12.75 per Mcf for Kern River and a maximum daily reservation fee of .2022 cents per MMbtu for Mojave. The Commission also established minimum reservation fees of zero for both companies. The Commission authorized the companies to negotiate reservation fees with their customers within these parameters.

Subsequently, the companies negotiated rates that complied with the terms set forth in the Commission's certificate order, and the Commission approved the rates as incorporated into the companies' contracts. *Kern River Gas Transmission Co.,* 53 FERC ¶ 61,172 (1990); *Mojave Pipeline Co.,* 56 FERC ¶ 61,282, *reh'g granted,* 57 FERC ¶ 61,300 (1991). The Commission's certificate order also provided as follows:

> ... [T]he Commission is requiring Kern River [and Mojave] to make ... [section 4] tariff filing[s], three years after [their] in-service date[s], either justifying [their] existing rates or proposing alternative rates to be effective no later than three years after the in-service date. This requirement will enable the Commission to examine Kern River's [and Mojave's] actual operating costs, and to make a determination at that time as to whether ... rates are in the public interest. The filing[s] must use the same or greater throughput levels on which Kern River's [and Mojave's] initial rates have been predicated. The previously negotiated reservation fee[s] will not be subject to review; any rate adjustment will be made to the usage charge[s].

50 FERC ¶ 61,069, at 61,151, 61,153.[3]

Before commencing service, Kern River and Mojave filed applications requesting amendments to their optional certificates so as more accurately to reflect the costs of constructing their pipeline systems. They sought increases in the initial transportation rates, including the usage and reservation fees, set by the Commission, in order to reflect the updates in actual costs of construction. Both companies represented that they had informed their customers of the new cost projections and rate

---

If demand does not meet projected volume, the pipeline company may not shift the unrecovered costs of its new service to the pipeline's other services, absent a showing of benefit to customers taking those other services. 18 C.F.R. § 157.103(d)(8) (1992). The pipeline therefore bears the risk of not recovering the cost of its investment if its anticipated market does not materialize.

[3]The Commission may change rates of an applicant already in force through a filing proceeding pursuant to § 4 of the NGA. Section 4, subsections (d) and (e), describe procedures for changes in rates and charges. Requirements include notice to the Commission and to the public through filing new rate schedules, and hearings at the discretion of the Commission. *See* 15 U.S.C. § 717c(d), (e) (1988).

calculations and that neither company had received objections.

On January 30, 1992, in two separate orders, the Commission approved an amendment to the companies' certificates increasing the initial rates, including the usage and reservation fees, that the Commission originally had authorized, in order to compensate for the increased construction costs. *Kern River Gas Transmission Co.,* 58 FERC ¶ 61,073 (1992); *Mojave Pipeline Co.,* 58 FERC ¶ 61,074 (1992). The Commission calculated a new maximum monthly reservation fee of 12.92/Mcf for Kern River and increased Mojave's maximum daily reservation rate to .2144/MMBtu.

PGT, a pipeline competitor, applied for rehearing. PGT, which holds a traditional section 7 certificate to service the same markets as Kern River and Mojave, contended that the Commission lacked authority to raise the initial rates for the two companies' services above the originally certificated rates. PGT argued that pursuant to the Natural Gas Act (NGA), the Commission could implement the proposed rate changes only through a section 4 rate filing, not through an amendment to the companies' section 7 certificates. Furthermore, PGT argued that the rate increase proposals violated the express conditions and the plain language of the optional certificates by allowing an increase in the fixed reservation fees of both companies. PGT contended that the companies' claims that none of their customers objected to the increases could not justify non-compliance with the optional certificate conditions.

The Commission denied PGT's application. *Kern River Gas Transmission Co.,* 60 FERC ¶ 61,123 (1992). PGT appeals, challenging the Commission's two orders amending Kern River and Mojave's certificates and its order denying PGT's application for rehearing.[4]

---

[4]Intervenors Kern River and Mojave (the "intervenors") challenge PGT's standing to appeal to this court, basing their challenge upon § 19(b) of the NGA, which provides as follows: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States...." 15 U.S.C. § 717r(b) (1988). The intervenors contend that because aggrievement requires injury in fact that is likely to be redressed by a favorable decision, *Lujan v. Defenders of Wildlife,* --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), and because PGT has shown no concrete, particularized, actual, and imminent injury, *id.,* PGT cannot appeal the Commission's orders. The intervenors assert that the Commission's orders increasing their rates help, rather than hurt, PGT, because PGT can, in turn, increase its prices or capture more business, or both. Indeed, the intervenors argue, PGT's rates are well below the increased rates granted to Kern River and Mojave.

II.

"The function of judicial review of agency action is to determine the authority of the agency, compliance by the agency with the appropriate procedural requirements, and to review any claim that agency action is arbitrary, capricious, or an abuse of discretion." *Acadian Gas Pipeline Sys. v. FERC,* 878 F.2d 865, 868 (5th Cir.1989) (citing Administrative Procedure Act, 5 U.S.C. § 706). We review an agency's interpretations of its authorizing statute, its prior orders, and its own regulations under a highly deferential standard.[5] While we accord an agency's interpretation of its own regulation due deference, however, "the interpretation must rationally flow from the language of the regulation, and any departure from past interpretations of the same regulation must be adequately explained and justified." *Acadian Gas,* 878 F.2d at 868.

A.

PGT objects to the Commission's authority under section 7 of the NGA, 15 U.S.C. § 717f, to issue orders amending Kern River's and Mojave's optional certificates to increase the initial reservation rates before commencement of service. The Commission responds that its action was consistent with the statutory scheme, regulations, and its previous orders.

In response, PGT emphasizes the liberal standing that competitors traditionally have had to challenge agency orders relating to their competitors. PGT asserts that customers of competing pipelines heavily weigh their purchasing decisions on the basis of the volumetric or usage portion of the pipeline charge, and PGT refutes Kern River and Mojave's argument that PGT's rates are well below Kern River's and Mojave's rates by pointing out that rate levels fluctuate from time to time. Moreover, the challenged orders involve not only rate increase proceedings but also involved § 7 certificate amendments, and PGT asserts that it has standing as a project competitor.

We conclude that PGT has standing. By allowing an optional certificate holder to amend its certificate under § 7 in the same manner as a traditional certificate holder, PGT asserts that the Commission has harmed PGT in its position as a conventional certificate holder. PGT argues that a company that has assumed an increased risk in exchange for streamlined and less burdensome procedures should not be allowed to shift that risk in the same manner as a company that has endured lengthy and costly procedures in exchange for a lesser economic risk. PGT alleges particularized injury in its position as a traditional certificate holder and competitor, and a favorable decision by this court would provide a remedy for that injury.

[5] *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (reviewing agency's interpretation of its authorizing statute); *Udall v. Tallman,* 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (reviewing agency interpretation of its own regulations); *Acadian Gas,* 878 F.2d at 868 (same).

First, we find that the Commission's actions were not inconsistent with the statute. The Commission sets the initial rates for a newly-certificated service as a condition of that service in a section 7 proceeding.[6] Pursuant to its section 7 authority to establish the initial conditions under which gas may be dedicated to interstate use and to its authority to modify initial rates, *Atlantic Ref.,* 360 U.S. at 389, 392, 79 S.Ct. at 1254, 1255, the Commission may amend the initial rates set in the section 7 proceeding before service commences.[7]

By contrast, section 4 of the NGA contemplates changes in rates *after* commencement of service. Section 4(d) provides in relevant part as follows:

(d) Changes in rates and charges; notice to Commission

Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate ... except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules *then in force* and the time when the change or changes will go into effect.

15 U.S.C. § 717c(d) (1988) (emphasis added). The Commission ordinarily requires companies to submit their rate schedules for periodic review to insure that the rates are "just and reasonable" pursuant to section 4(a). *See Northern Natural Gas,* 827 F.2d at 784-793 (discussing rate change procedures under NGA). The Commission set forth such a requirement in Kern River's and Mojave's optional certificate orders.

---

[6]*See Atlantic Ref. Co. v. Public Serv. Comm'n,* 360 U.S. 378, 388-89, 79 S.Ct. 1246, 1254, 3 L.Ed.2d 1312 (1959) ("[S]ection 7 is given only that scope necessary for "a single statutory scheme under which all rates are established initially by the natural gas companies, by contract or otherwise, and all rates are subject to being modified by the Commission.' " (quoting *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 341, 76 S.Ct. 373, 379, 100 L.Ed. 373 (1956))); *Northern Natural Gas Co. v. FERC,* 827 F.2d 779, 788-89 (D.C.Cir.1987) (discussing the Commission's adopted practice of imposing, upon § 7 certificates, the condition that the company initially charge a rate determined by the Commission to be at a level in line with rates previously determined to be just and reasonable).

[7]*See Great Lakes Gas Transmission,* 62 FERC ¶ 61,103, at 61,753 (1993) (proposed certificate amendment pursuant to section 7 to increase rates because of increased costs would have been proper if filed prior to commencement of service); *Algonquin Transmission Co.,* 49 FERC ¶ 61,330 (1981) (granting proposed certificate amendment as required by public convenience and necessity); *ANR Storage Co.,* 14 FERC ¶ 61,289 (1981) (allowing increase in initial rates); *Union Light, Heat & Power Co.,* 6 FERC ¶ 61,133 (1978) (under § 7, the Commission has authority to establish initial rate for service, but once service commences, any change in rates must be accomplished by appropriate filings under § 4).

In its orders amending Kern River's and Mojave's certificates, the Commission acknowledged the distinction between the rate changes contemplated by section 7 and those contemplated by section 4. The Commission emphasized that while section 4(d) requires that changes in rate schedules "then in force" must be filed pursuant to the requirements of section 4, in the instant case no rate schedules "then in force" necessitated a section 4 filing to effectuate a change. 58 FERC at 61,239; 58 FERC at 61,247. The Commission's interpretation of the statute is rational and consistent with the plain language of the provision.

In the conventional or standard certificate context, PGT does not contest the Commission's authority, pursuant to section 7, to amend initial rates before service commences. Indeed, prior to the commencement of service, the Commission issued an order amending PGT's traditional certificate for the same market, to increase PGT's rates to cover increased costs of construction. *Pacific Gas Transmission Co.,* 56 FERC ¶ 61,192 (1991).[8] Similarly, PGT does not contest the Commission's authority to effectuate change in rates pursuant to section 4 in either the conventional or optional certificate context.

PGT contests only the Commission's authority to amend *optional* certificates to increase initial rates prior to commencement of service without requiring a section 4 rate change filing. The Commission responds that it permits initial rate increase amendments for optional as well as traditional certificate holders.[9] Our examination of the regulations indicates that the Commission's action was not inconsistent with the provisions detailing optional certificate procedures.

The regulations regarding the procedures for optional certificates do not contain any prohibitions regarding the Commission's authority to modify initial rates under section 7. *See* 18 C.F.R. §§ 157.100-.106 (1992). The regulations setting forth the terms and conditions under which

_____

[8]In its orders amending Kern River's and Mojave's certificates, the Commission observed that in light of its order permitting PGT to amend its initial rates, "it would be unfair for the Commission to dismiss Kern River['s and Mojave's] filing[s] ... particularly in view of the fact that PGT and Kern River [and Mojave] are both proposing to serve the California market." 58 FERC at 61,239; 58 FERC at 61,247.

[9]*See Gateway Pipeline Co.,* 59 FERC ¶ 61,088 (1992) (proposed § 7(c) optional certificate amendment increasing initial rates to reflect actual costs before initial rates went into effect was required by public convenience and necessity).

optional certificates are authorized indicate that rates filed for new service must be volumetric, that is, based upon units of service actually purchased.  18 C.F.R. § 157.103(d)(3).  The regulation, however, makes an exception for a reservation charge for firm transportation service consistent with conditions set forth in 18 C.F.R. § 284.8(d), which provides as follows:

> Reservation fee.  Where the customer purchases firm service, a pipeline may impose a reservation fee or charge on a shipper as a condition for providing such service.  The reservation fee may not recover any variable costs or any fixed costs in excess of those costs that would be recovered by using the same ratemaking methodology used for determining the demand charge in the pipeline's sales rates....

18 C.F.R. § 284.8(d) (1992).

The regulations do not provide guidance beyond describing the nature of the rates companies are permitted to charge their customers.  In amending Kern River's and Mojave's certificates to increase the initial rates before commencement of service, the Commission did not violate any provisions of the regulations dealing with rates charged in optional certificate proceedings.  Similarly, the differences between traditional and optional certificate procedures, as detailed in the regulations and discussed more fully below, do not indicate that such a prohibition would be consistent with the streamlined procedures and increased economic risk incorporated into the optional certificate procurement process.

Finally, the Commission adequately has explained its departure from its interpretation of the same statute and regulations in a prior order.  PGT points to a previous order entered by the Commission granting an optional certificate to the Wyoming-California Pipeline Company ("Wy-Cal"), another competitor in the same market.  In that order, the Commission stated that Wy-Cal could propose rate adjustments "provided that WyCal's rate adjustments are subject to the terms of the agreement and therefore subordinate to the contract terms."  45 FERC ¶ 61,234, at 61,682.

Regarding the method by which Wy-Cal must effectuate change in its rates, the Commission stated as follows:

> Kern River requests clarification as to whether Wy-Cal must file a NGA section 4 rate change in order to revise its initial rates to reflect cost increases.  Kern River also requests clarification as to whether Wy-Cal can increase the reservation fee in the future through a rate filing under section 4 of the NGA.  We clarify that WyCal must file a section 4 rate change in order to revise the initial rates to reflect cost increases.  We further clarify that the maximum reservation fee can be increased in the future through a section 4 rate proceeding,

but only if such increase is cost supported. *Id.* at 61,680. PGT asserts that the Commission's orders amending Kern River's and Mojave's optional certificates without requiring a section 4 filing are inconsistent with the Commission's order regarding Wy-Cal.

The Commission addressed this argument in its order amending Kern River's and Mojave's certificates, clarifying its Wy-Cal order by stating that section 4(d) of the NGA does not prohibit the Commission from modifying rates in a section 7 proceeding if the rates are not yet in effect. 58 FERC at 61,239; 58 FERC at 61,247. The Commission explained that in the Wy-Cal case, no one had challenged its determination and that "upon further consideration ... we see no reason why a section 4 filing would be the only procedural avenue available to the applicant under these circumstances." *Id.*

In the Wy-Cal case, Kern River had requested the Commission to clarify its order in the context of section 4. Kern River did not mention, and therefore the Commission did not address, changes in rates in a section 7 proceeding.

PGT thus fails to show any reason why the Commission must treat a traditional certificate differently from an optional certificate in the initial stages, prior to commencement of service, under section 7. Therefore, we cannot conclude that the Commission's action in amending Kern River's and Mojave's certificates was arbitrary, capricious, or an abuse of discretion.

The Commission's interpretation of its authority to amend the orders under section 7 rationally flows from the language of the statute and is not inconsistent with the regulations authorizing optional certificate procedures. Furthermore, the Commission adequately explained and justified its departure from past interpretations of the same regulation when it clarified its order issued in the Wy-Cal case. Under the highly deferential standard which we accord agency decisions, the Commission did not err in issuing orders amending Kern River's and Mojave's optional certificates pursuant to section 7.

## B.

In addition to its general objection to the Commission's authority to amend the optional certificates pursuant to section 7, PGT makes several specific arguments alleging error in the

Commission's actions. First, PGT argues that by allowing Kern River and Mojave to amend their optional certificates to increase their initial reservation rates, the Commission violated the plain language of its original certificate order. PGT points to the last sentence of the portion of the Commission's original order quoted above, which reads as follows: "The previously negotiated reservation fee[s] will not be subject to review; any rate adjustment will be made to the usage charge[s]." 50 FERC ¶ 61,069, at 61,151, 61,153. PGT contends that this specific condition of Kern River's and Mojave's optional certificates, to which both companies agreed, effectively prevents any change in initial reservation rates.

In its orders amending Kern River's and Mojave's certificates, the Commission addressed PGT's "plain language" argument, asserting that the restriction in its certificate orders applied only to the section 4 filings that the Commission was requiring both pipelines to file within three years after the commencement of service, either justifying the pipelines' existing rates or proposing alternative rates. 58 FERC at 61,239; 58 FERC at 61,247. The Commission explained that the restriction did not apply to revisions in the pipelines' initial rates prior to commencement of service.

PGT fails to present reasons why the Commission's interpretation of the language of its orders is erroneous. PGT simply urges that the Commission's conclusion that the specified language was not applicable to a section 7 amendment of initial rates was irrational and an abuse of discretion. The Commission responds that the language of the entire paragraph (of which PGT relies upon only one sentence) indicates that the subject under discussion is the section 4 rate filings that the Commission was requiring the pipelines to make within three years of the initial rates' going into effect. The Commission emphasizes that according to the plain language of the paragraph, it was to make its restricted determinations *after* the in-service date. The sentence to which PGT refers indicates that the Commission cannot alter reservation rates at the time of the section 4 proceedings.

The Commission's interpretation of the language of its original certificate order is a reasonable one to which we defer. The lone sentence relied upon by PGT, read properly in context, addresses the same subject matter discussed in the first few sentences of the paragraph, namely, the section 4 rate filings that the Commission was requiring the pipelines to make three years after the start-up of

operations. The sentence quoted by PGT does not begin a new paragraph; nor does it introduce a new or separate item within the same paragraph. We cannot conclude that the Commission abused its discretion in its interpretation of the plain language of its prior order.

C.

PGT next argues that the Commission's orders vitiate the risk responsibility of optional-certificate pipelines. PGT emphasizes that pipelines agree to assume an increased risk in exchange for streamlined procedures when applying for an optional, rather than a traditional, certificate. PGT urges that the reservation fees that are established in the contracts between the pipelines and their customers represent the final allocation of risks between the parties and that the Commission's orders allowing increases in the reservation rates in turn allow the pipelines to shift more of their risk to the customer, in violation of the pipeline's agreement to assume increased risk under an optional certificate.

The Commission agrees that in obtaining an optional certificate, a pipeline assumes the economic risks of the venture.[10] The Commission disagrees with PGT, however, on exactly what economic risks the pipeline agrees to assume under optional certificate procedures and as to what type of risk allocation or risk-shifting is improper under an optional certificate. The Commission asserts that a pipeline's risk of underestimating its cost of construction is not a risk that the Commission contemplated the pipeline alone would bear under optional certificate procedures.

The Commission claims that it is concerned only with the risk that no market for newly-certified pipeline facilities exists or will develop. To this end, the Commission adopted specific regulations to prevent optional certificate pipeline companies from shifting their costs, should a market fail to develop, to customers purchasing the pipeline's *other* services.[11] The Commission adds,

---

[10]*See Altamont Gas Transmission Co. v. FERC,* 965 F.2d 1098, 1100 (D.C.Cir.1992) (optional certification leaves pipeline with more financial risk than does conventional § 7 certificate).

[11]*See Associated Gas Distrib. v. FERC,* 824 F.2d 981, 1037 (D.C.Cir.1987) (reservation charge under optional certificate procedures involves risk-sharing with particular customer who arranges for service), *cert. denied,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990). The Commission required that Kern River and Mojave base their rates upon a 957 load factor and barred the companies from shifting costs to other customers by rolling in the costs to other

however, that shifting some of the risk to customers of the *new* service through negotiation of reservation fees is acceptable.

The Commission's argument is consistent with the plain language of the statute detailing the differences in what an applicant must show in order to obtain a traditional, versus an optional, certificate. The major difference in the procedure for obtaining an optional certificate lies in the absence of a required showing that a market for the applicant's new services exists. *See* 18 C.F.R. § 157.102(b)(1)(iii) (1992). Hence, the Commission's claim that it contemplated the risk of failure of a market to develop when it established optional certificate procedures, and that it anticipated the accompanying assumption of economic risks of the venture, logically grows out of the basic premise for the procedures.

The Commission provided for an optional certificate applicant to assume that risk in the regulations, which provide as follows:

> Prohibitions against cost shifting. No costs originally allocated to a new service may subsequently be allocated to any other services without a filing under § 154.63 of this part and a determination by the Commission that the costs sought to be reallocated are in fact being incurred for the benefit of the other services.

18 C.F.R. § 157.103(d)(8) (1992). Subsection (d)(4) reads as follows:

> Based on projected units of service. Any rate filed for new service must be designed to recover costs on the basis of projected units of service. The units projected for the new service in the initial rates filed under this subpart may be increased in a subsequent rate filing but may not be decreased.

18 C.F.R. § 157.103(d)(4) (1992).

Thus, the optional certificate applicant bears the risk of a non-developing market or a market that does not rise to the applicant's projections as incorporated into its rates for new service. Relating the decreased procedural burden of an optional certificate applicant to its increased assumption of risk does not require a logical leap that points to an erroneous interpretation of agency regulation or procedure. The Commission's assertion that the risk optional certificate holders must bear is the risk of a market that does not develop is consistent with the plain language of the regulations.

---

services now or in the future. 50 FERC ¶ 61,069, at 61,150. Therefore, unless Kern River and Mojave utilized at least 957 of their pipelines' capacities, they could not recover their costs.

Once again, the Commission's interpretation of its regulations is a reasonable and rational one to which we defer. Because we decide that the Commission's decision to increase initial reservation rates before commencement of service does not affect the risk allocation incorporated into optional certificate procedures, we do not address PGT's argument that the Commission's orders' effect upon risk allocation threatens to obliterate the distinction between optional and conventional certificates.

### D.

Finally, PGT asserts that the Commission's increase of Kern River's and Mojave's reservation rates above the levels specified in their contracts violates the Commission's standards. PGT claims that, by allowing an increase in previously negotiated reservation fees that the Commission had approved as incorporated into Kern River's and Mojave's agreements with their customers, the Commission violated the plain language of its prior order authorizing negotiation of reservation fees within set parameters.

The Commission considered this argument in its orders approving amendments of the optional certificates and observed that Kern River and Mojave had indicated that their shippers had reviewed the proposed rate increases and did not object to them. 58 FERC at 61,237; 58 FERC at 61,246. The Commission emphasizes in its brief that an increase in the initial reservation fee is "simply an amendment to the original terms of service" and would not work the same injustice as a later change in the reservation fee through a section 4 rate proceeding that would undermine the parties' agreements. Once again, in light of the Commission's authority to modify the initial rates through a section 7 certificate amendment, PGT's argument fails.

### III.

Because the Commission's actions were not inconsistent with, and flowed rationally from, the language of the statute and regulations, and because the Commission adequately explained its departure from past interpretations of the same regulations in its prior orders, we find that the Commission's actions were neither arbitrary nor capricious and did not constitute an abuse of discretion. Accordingly, we DENY the petition for review and AFFIRM the Commission's orders amending Kern River and Mojave's certificates and denying PGT's application for rehearing.