115 F.3d 1266
 Util. L. Rep. P 14,161
MICHIGAN GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Board of Public Works of the City of Holland, Michigan, Intervenor.
 No. 95-4280.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 24, 1996.
Decided June 10, 1997.
 
 Mary a. Walker, Neil L. Levy (argued and briefed), Winthrop, Stimson, Putnam & Roberts, Washington, DC, for Petitioner.
 Joel M. Cockrell (argued and briefed), Federal Energy Regulatory Commission, Washington, DC, for Respondent.
 William H. Penniman (argued and briefed), Sutherland, Asbill & Brennan, Washington, DC, for Intervenor.
 Before: WELLFORD, DAUGHTREY, and MOORE, Circuit Judges.
 MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. WELLFORD, J. (pp. 1272-73), delivered a separate concurring opinion.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Petitioner Michigan Gas Company ("MiGas") petitions for review of two orders of the Federal Energy Regulatory Commission ("FERC" or "the Commission") authorizing construction by ANR Pipeline Company ("ANR") of a new delivery point for natural gas. The Commission gave its approval over the protest of MiGas, which intervened at the agency proceeding. MiGas contends that the Commission failed to state its reasons for the authorization and failed to hold an evidentiary hearing. The Board of Public Works of the City of Holland, Michigan ("BPW"), as an intervenor, challenges MiGas's standing to bring this appeal. For the reasons stated below, we deny the petition for review.
 
 I. BACKGROUND
 
 2
 MiGas is a local distribution company (LDC) that has a nonexclusive franchise to supply natural gas to consumers in Holland, Michigan. Among its customers is one of three electricity-generating plants operated by BPW, which is the exclusive provider of electricity to consumers in Holland. BPW's James DeYoung Plant is a coal-fired station that uses natural gas for ignition purposes. BPW's other two generating stations currently burn oil; one of them, the 48th Street Peaking Station, can use natural gas. MiGas has never supplied gas to the 48th Street Station.
 
 
 3
 After negotiating with several gas suppliers (and rejecting a bid from MiGas), BPW contracted with ANR, an interstate pipeline company, and with another supplier, Consumers Power, an LDC, to obtain natural gas to replace oil at the 48th Street Station. To that end, BPW planned to construct a 9.5-mile pipeline from the 48th Street Station. Consumers Power agreed to construct a delivery tap for delivery of its gas to the BPW pipeline, and obtained authorization from the Michigan Public Service Commission (the state agency that regulates LDCs, including MiGas) without an appeal by MiGas. BPW also asked ANR to construct a delivery tap connecting ANR's pipeline to the BPW pipeline; BPW would reimburse ANR for the construction.
 
 
 4
 ANR, an interstate gas company subject to the jurisdiction of the Natural Gas Act ("NGA"), applied for FERC authorization to construct the delivery tap. Under the NGA, an interstate gas company must obtain a certificate of public convenience and necessity before constructing a transportation facility (i.e.pipeline) or a connection to a local facility. NGA § 7 (15 U.S.C. § 717f). MiGas filed a protest pursuant to 18 C.F.R. § 157.205(f). BPW and Michigan Consolidated Gas Company also intervened. MiGas argued that granting authorization to ANR to construct the delivery tap would not be in the public interest, which under the NGA is the governing concern. MiGas asserted that a comparative analysis demonstrated that the cost of the proposed connection to ANR would far exceed the cost of a connection to MiGas at MiGas's proposed rate. MiGas contended that because the ANR connection would be so much more expensive, it would not serve the "public convenience and necessity." See NGA § 7(e). MiGas further argued that the construction of the BPW pipeline and the ANR connection would create wastefully duplicative facilities, and that interconnection with MiGas would be more economical and would provide greater flexibility of supply. It also contended that BPW's plan to build a pipeline and connect to ANR was "likely to be the first step in a plan to serve other high load factor customers [e.g., utilities, as opposed to residences] now served by Michigan Gas." J.A. at 36. MiGas requested that the Commission deny ANR's application, or in the alternative, conduct an evidentiary hearing to determine whether the construction would be in the public interest.
 
 
 5
 The Commission rejected all of MiGas's arguments and granted the authorization, citing its policy of allowing competition between LDCs and interstate pipelines absent evidence of "anticompetitive or unduly discriminatory behavior," as well as a policy of honoring the choice of the end-user--here, BPW. 71 F.E.R.C. p 61,289 (1995). The Commission stated that MiGas had proffered no evidence of anticompetitive or discriminatory behavior. MiGas requested a rehearing, which the Commission denied, again discussing its current policy. 73 F.E.R.C. p 61,044 (1995). MiGas filed a Petition for Review of those two orders in this court. BPW was granted leave to intervene on behalf of the respondent.
 
 II. STANDING
 
 6
 BPW challenges MiGas's standing to pursue this appeal, arguing that MiGas has suffered no injury from the Commission's orders, that any alleged injury is not redressable, and that MiGas does not have an interest protected by the Natural Gas Act. MiGas responds that it is an "aggrieved" party pursuant to NGA § 19(b) (15 U.S.C. § 717r(b)) and that it has been injured as a competitor of BPW. BPW contended at oral argument that MiGas cannot rely on its alleged competitive injury because it did not allege such injury in its application for rehearing; any objection not raised in the rehearing application cannot be argued on appeal. NGA § 19(b). The limitation imposed by § 19(b) on a petitioner's arguments on the merits, however, does not delimit this court's standing inquiry. Standing "is a qualifying hurdle that plaintiffs must satisfy even if raised sua sponte by the court." Community First Bank v. National Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir.1994). MiGas is not now barred from arguing, for standing purposes, that it will suffer competitive injury simply because it did not raise that argument before the Commission, where Article III requirements did not apply.
 
 
 7
 Section 19(b) states that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order" in the appropriate United States Court of Appeals.[1] This language is similar to § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702, which the Supreme Court has interpreted as granting standing if there is an "injury in fact" to an interest that is "arguably within the zone of interests to be protected or regulated" under the applicable statute. Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); NORTHWESTERN PUBLIC SERV. CO. V. FPC, 520 F.2D 454, 457-58 (D.C.CIR.1975)[2] (noting the similarity and applying the same test to NGA § 19(b)); accord Moreau v. FERC, 982 F.2d 556, 564 (D.C.Cir.1993). In addition to meeting this standard, petitioners must satisfy the requirements of constitutional standing. El Paso Natural Gas Co. v. FERC, 50 F.3d 23, 26 (D.C.Cir.1995); Shell Oil Co. v. FERC, 47 F.3d 1186, 1200 (D.C.Cir.1995). That test requires proof of injury in fact which has a causal connection to the conduct being challenged (here, the orders granting authorization for the delivery connection) and which is likely to be redressed by a decision in the petitioner's favor. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992); accord Bennett v. Spear, 520 U.S. 154, ----, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997); City of Detroit v. Franklin, 4 F.3d 1367, 1372 (6th Cir.1993) (citing Lujan ), cert. denied sub nom. City of Detroit v. Brown, 510 U.S. 1176, 114 S.Ct. 1217, 127 L.Ed.2d 563 (1994).
 
 
 8
 The two standards are similar but not identical; "[c]ommon to both these thresholds is the requirement that petitioners establish, at a minimum, 'injury in fact' to a protected interest." Shell Oil, 47 F.3d at 1200. The "injury in fact" must be "(a) concrete and particularized ... and (b) 'actual or imminent, not "conjectural or hypothetical" '...." Lujan, 504 U.S. at 560, 112 S.Ct. at 2136 (citations omitted).
 
 
 9
 At oral argument, MiGas conceded that it was not basing its claim of injury on the loss of the opportunity to supply the 48th Street Station, focusing instead on the alleged competitive threat posed by BPW to MiGas's ability to retain its other customers. For standing purposes, MiGas contends that its injury is that the FERC orders will result in BPW having the ability to "run amok," going beyond merely transporting gas for use at the 48th Street Station to establish itself as a competitor in supplying gas to other customers in Holland.[3] There is no evidence in the record showing that BPW in fact has any such intention. Though MiGas has contended repeatedly and emphatically that construction of the pipeline and the ANR delivery tap will inflict economic injury to MiGas by enabling BPW to become a gas distributor and to compete unfairly with MiGas, MiGas has offered nothing but its own assertions to that effect. Without evidence that the predicted result is "actual or imminent," such an injury can only be "conjectural or hypothetical." MiGas has given this court no reason to conclude that the alleged injury is anything more than a theoretical possibility. MiGas therefore has not demonstrated an injury in fact.
 
 
 10
 MiGas also cannot meet the second and third requirements for Article III standing. Even if its alleged injury meets the standard, MiGas also must be able to establish that the injury was caused by the FERC orders and that this court could redress the injury by vacating the orders and remanding to the Commission. See North Carolina Utils. Comm'n v. FERC, 653 F.2d 655, 667 (D.C.Cir.1981); see also Michigan Consol. Gas Co. v. Economic Regulatory Admin., 889 F.2d 1110, 1111-12 (D.C.Cir.1989). The FERC orders authorizing construction of the ANR delivery tap, however, do not have a causal connection to the alleged injury. MiGas bases its alleged injury on its contention that the orders will allow BPW to construct its own pipeline and to compete for MiGas's high load factor customers as a rival supplier of natural gas, "cherry-picking" desirable customers away from MiGas. MiGas argues that the competitive playing field would not be level, given BPW's status as a government entity. MiGas cannot, however, demonstrate that the alleged threat posed by BPW is in any way dependent on the construction authorized by FERC. Only the ANR tap was subject to the jurisdiction of FERC pursuant to the Natural Gas Act. Even without access to ANR's supply, BPW could obtain natural gas from sources other than MiGas; a contract with another supplier, Consumers Power, had already been approved by the Michigan Public Service Commission, without an appeal by MiGas. The 9.5-mile pipeline that BPW intended to build, though MiGas repeatedly emphasized it in its challenges to the efficiency of the proposed ANR construction and in its allegations regarding BPW's future plans,[4] was not affected by the FERC orders or by this litigation arising from those orders. In fact, BPW stated at oral argument that the pipeline has already been constructed. Clearly, any competitive threat that BPW might pose to MiGas in the future was not caused by the FERC orders authorizing construction of a delivery tap from one gas supplier to BPW's own pipeline.
 
 
 11
 For the same reasons, MiGas must fail the third prong of the constitutional inquiry. Even if this court vacated the FERC orders, it would not redress MiGas's alleged injury. The inability of ANR to supply gas to BPW would not necessarily force BPW to turn to MiGas, and would not stop BPW from establishing itself as a gas supplier if it did decide to do so. BPW's ownership of its own pipeline, and its connection to another LDC, would allow it to pursue other options.
 
 
 12
 The last requirement for standing is prudential, rather than constitutional. In administrative law cases, including those under NGA § 19(b), federal courts require that the alleged injury be to an interest that is " 'arguably' within the zone of interests sought to be protected" by the statute at issue. Panhandle Producers and Royalty Owners Ass'n v. Economic Regulatory Admin., 822 F.2d 1105, 1109 (D.C.Cir.1987) (citing Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 394-403, 107 S.Ct. 750, 754-59, 93 L.Ed.2d 757 (1987), and Association of Data Processing Serv. Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970)).
 
 
 13
 MiGas's interest is arguably within the zone of interests that the Natural Gas Act was meant to protect.[5] Although the Act was intended "to protect consumers against exploitation at the hands of natural gas companies," FPC v. Hope Natural Gas Co., 320 U.S. 591, 612, 64 S.Ct. 281, 292, 88 L.Ed. 333 (1944), rather than to protect the economic self-interest of LDCs, courts often have been lenient with regard to the standing of competitors in highly regulated industries. In Panhandle, the court held that an association representing domestic gas producers, royalty owners, and service companies was "at least 'arguably' within the zone of interests sought to be protected by § 3 of the NGA." 822 F.2d at 1109. "Under both § 3 and its companion, § 7 ... courts have found various types of competitors entitled to challenge agency decisions...." Id. (citations omitted). The court went on to state that
 
 
 14
 [c]ompetitors have a seemingly unbroken record of success in securing standing to challenge decisions involving agency licensing.... This success may seem perplexing in light of many judicial assertions of a broad national policy in favor of competition in virtually every area of regulation.... But a license system by its very nature restricts entry into a particular field or transaction. Firms already operating within the restricted area, or in competition with such firms, benefit from vigorous enforcement of the restriction.
 
 
 15
 Id. (citations omitted); accord Associated Gas Distributors v. FERC, 899 F.2d 1250, 1259 (D.C.Cir.1990) (holding that an association of LDCs had standing under § 7 because they "would benefit from vigorous enforcement of the licensing requirements of the nation's natural gas laws"). See also Pacific Gas Transmission Co. v. FERC, 998 F.2d 1303, 1307 n. 4 (5th Cir.1993) (holding that a project competitor had standing to challenge an agency order relating to its competitor; the petitioner had emphasized "the liberal standing that competitors traditionally have had" to bring such challenges).
 
 
 16
 This court has held in a different context that competitors seeking to limit competition can further congressional objectives even when the legislative history shows that limiting competition was not Congress's intent. See Community First Bank v. National Credit Union Admin., 41 F.3d 1050, 1054 (6th Cir.1994) (holding that banks had standing to challenge charter expansions of credit unions under the Federal Credit Union Act, even though the act's legislative history showed that Congress intended to promote the growth of credit unions). See also KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 16.9, at 202-03 (3d ed. Supp.1995) (characterizing Community First Bank as "a relatively broad interpretation of the zone of interests test"; contrasting and critiquing the "narrow version" in Liquid Carbonic Indus. Corp. v. FERC, 29 F.3d 697 (D.C.Cir.1994)).
 
 
 17
 Even if MiGas meets the prudential "zone of interests" test for standing, however, its failure to satisfy the constitutional test is fatal. Because MiGas cannot satisfy the requirements of injury in fact, causation, and redressability, we hold that it does not have standing to seek review in this court. For that reason, we DENY the petition for review of the two Commission orders.
 
 
 18
 WELLFORD, Circuit Judge, concurring.
 
 
 19
 I agree with much of what my colleague has written on this difficult case. In sum, I believe we agree on the end result, although we would approach that terminal result, denial of the petition for review, from different directions.
 
 
 20
 Although it is a close call, I would hold that MiGas does have standing. I reach this conclusion in light of the expansive precedent cited by Judge Moore, particularly Associated Gas Distributors v. FERC, 899 F.2d 1250 (D.C.Cir.1990), and Pacific Gas Transmission Co. v. FERC, 998 F.2d 1303 (5th Cir.1993), indicating a liberal approach to standing. I would give MiGas the benefit of the doubt and hold that petitioner does have standing. It is, at least arguably, within the zone of interest protected by the Natural Gas Act.
 
 
 21
 Although MiGas was deemed to have standing to challenge the action of FERC, I am persuaded that FERC committed no error in its disposition of the controversy. Were I called upon to reach the merits in this case, I would concur in the result reached by FERC. In my view, however, FERC should have granted MiGas a hearing and an opportunity to present proof. I consider this failure, however, under all the circumstances, to have been harmless error, particularly in light of the factor of risk assessment and economic choice by a public body ultimately subject to voter (and user) control and authority.[1]
 
 
 22
 Accordingly, although I conclude that MiGas has standing that should have had opportunity for an evidentiary hearing before FERC, I concur in the denial of the petition for review.
 
 
 
 [1]
 An order may be reviewed either in the Court of Appeals for the District of Columbia or in the Court of Appeals "for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business...." This petition for review is properly before this court because ANR, the relevant company in this case, maintains its headquarters in Michigan. See ANR Pipeline Co. v. Conoco, Inc., 646 F.Supp. 439, 440 (W.D.Mich.1986)
 
 
 [2]
 The Federal Power Commission (FPC) preceded FERC in administering the Natural Gas Act. See Department of Energy Organization Act, §§ 402(a)(1)(C)-(F), (2)(B), Pub.L. No. 95-91, 91 Stat. 583-84 (1977) (transferring functions of the FPC under the NGA to FERC)
 
 
 [3]
 The Commission has no authority under the NGA to prevent BPW from setting itself up to compete with MiGas; its authority is limited to the approval or disapproval of ANR's delivery tap. See NGA § 1(b) (15 U.S.C. § 717(b)) (stating that the Act covers transportation and sale of gas in interstate commerce, and natural gas companies engaged in such transportation or sale, and specifically excludes from its coverage intrastate transportation and sale, local distribution, and facilities used for local distribution or for production). ANR is an interstate gas company transporting gas by pipeline into Michigan; the proposed delivery tap would be used to transport gas from an interstate pipeline to a consumer. BPW is within the Commission's jurisdiction only as a customer seeking to purchase gas in interstate commerce from ANR's pipeline
 Since MiGas apparently is most concerned about the potential future actions of BPW, rather than about competition from ANR, the regulated entity, the jurisdictional basis for this entire challenge is dubious--particularly in light of MiGas's statement at oral argument that it conceded the loss of the 48th Street Station's business to ANR.
 
 
 [4]
 Regardless of MiGas's obvious objection to the construction of BPW's pipeline, that construction is necessarily outside the jurisdiction of FERC under the NGA, and therefore outside the jurisdiction of this court on appeal. BPW's pipeline is owned and operated not by an interstate gas company for the purpose of transport in interstate commerce, but by an "end-user" (ultimate consumer of gas) for the purpose of obtaining gas for its own local consumption. See, e.g., Kansas Power and Light Co. v. FERC, 891 F.2d 939, 941, 943 n. 2 (D.C.Cir.1989) (noting that an industrial end-user's own construction was "beyond FERC's jurisdiction"); see also Cascade Natural Gas Corp. v. FERC, 955 F.2d 1412, 1414 & n. 1 (10th Cir.1992) (on facts similar to these, properly focusing on the jurisdictional construction of a tap and meter facility, and not on the end-users' own construction of a nine-mile pipeline). BPW is within the Commission's jurisdiction as ANR's customer; however, even if BPW later used its pipeline to sell gas to other consumers in Holland (as MiGas contends that it will), BPW still would not be subject to FERC jurisdiction as a gas distributor, since it would be engaged only in local (intrastate) distribution. Instead, BPW as a distributor would be left to the jurisdiction of the Michigan Public Service Commission. BPW's pipeline, therefore, is wholly outside the Commission's range of concern
 
 
 [5]
 Though MiGas has emphasized the potential competition between itself and BPW--two nonjurisdictional entities--its standing to challenge the FERC orders must be based on its status as a competitor with ANR, the regulated entity. MiGas can meet the "zone of interests" test only by showing a nexus of its interest with the subject matter of the NGA. Since ANR is covered by the NGA and MiGas and BPW are not, MiGas must hang its standing on competition with ANR
 
 
 [1]
 Michigan Public Service commission also has authority to consider such issues involving MiGas and BPW in light of the public interest, convenience, and necessity