RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0314P (6th Cir.)
File Name: 00a0314p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CONSUMERS ENERGY
COMPANY,

        *Petitioner,*

    *v.*

FEDERAL ENERGY
REGULATORY COMMISSION,

        *Respondent.*

No. 99-4097

On Petition for Review from
the Federal Energy Regulatory Commission.
Nos. PR99-4-000/01; PR99-4-002.

Argued: August 9, 2000

Decided and Filed: September 12, 2000

Before: COLE and GILMAN, Circuit Judges; TARNOW,
District Judge.

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

---

### COUNSEL

**ARGUED:** Deborah A. Moss, CONSUMERS ENERGY CO., Washington, D.C., for Petitioner. David H. Coffman, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Respondent. **ON BRIEF:** Deborah A. Moss, William M. Lange, CONSUMERS ENERGY CO., Washington, D.C., for Petitioner. Beth G. Pacella, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Respondent.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. Consumers Energy Company has petitioned this court for review of an order of the Federal Energy Regulatory Commission (FERC) that granted Consumers's petition to decrease certain of its rates but, according to Consumers, in doing so attempted to extend its regulatory authority beyond the boundaries authorized by Congress. For the reasons set forth below, we **GRANT** the petition, **SET ASIDE** the challenged order, and **REMAND** this case for further proceedings consistent with this opinion.

### I. BACKGROUND

The Natural Gas Act (NGA), 15 U.S.C. §§ 717-717z, confers upon FERC comprehensive regulatory authority over natural gas companies that engage in the sale of natural gas for resale or interstate gas transportation. Congress has carved out several exceptions to FERC's otherwise plenary authority. "Hinshaw pipelines" make up one of those exceptions. A Hinshaw pipeline is a natural gas pipeline that receives all of its out-of-state gas from persons "within or at the boundary of a [s]tate if all the natural gas so received is ultimately consumed" within the state in which it is received.

*Transmission Co. v. FERC*, 998 F.2d 1303, 1308 (5th Cir. 1993), but we are not required to accept an agency's representation that an order says "day" when it seems to us that the order says "night." Second, if we were to accept FERC's suggestion, and a subsequent dispute were to arise, it would be necessary to read and interpret three separate documents (FERC's original order, FERC's order denying rehearing, and this court's opinion) simply to understand what FERC's order, as "clarified" by this court, requires Consumers to do. This does not strike us as particularly efficient. Third, in light of FERC's apparent difficulty remaining within the limits of its statutory authority, we find ourselves reluctant to communicate the message that even when FERC oversteps its permitted bounds, its orders will be saved by highly strained judicial "clarifications."

### III. CONCLUSION

For all of the above reasons, the petition for review is **GRANTED**, the challenged order is **SET ASIDE**, and this case is **REMANDED** for further proceedings consistent with this opinion.

FERC, once Consumers provided the information, "the Commission would have the burden to justify any change in Consumers's rate, which would apply prospectively."

Despite FERC's arguments, Consumers's suspicion appears justified. If all FERC had really wanted to do was require Consumers to make periodic "informational filings," then it is difficult to understand why, for example, FERC's initial order provides that "[o]n or before December 1, 2001, Consumers shall file a *petition for rate approval to justify its current rate* or to establish a new maximum rate." (Emphasis added.) Also, as Consumers correctly observes, neither the phrase "informational filings" nor any obvious synonym for that phrase appears anywhere in FERC's original order or in the order denying rehearing.

We will therefore grant Consumers's petition, set aside the challenged order, and remand this case for further proceedings. FERC will be free to enter a new order approving Consumers's petition to decrease its rates for interruptible natural gas transportation services pursuant to § 5 of the NGA. Should FERC wish Consumers to make periodic informational filings, it may of course so require pursuant to § 10(a) of the NGA. This will allow FERC to do what it insists it has been trying to do all along, and will permit both sides to get what they have assured us they want. We trust that this time, however, the order will be issued with clarity and precision.

At oral argument, counsel for FERC suggested that this court could, rather than set aside the challenged order, instead deny the petition for review in an opinion "clarifying" that the order actually says what it would have to say for it to be on legally solid ground, i.e., that the order rests on FERC's § 5 authority. We can think of at least three reasons why we should not accept this suggestion. First of all, "clarifying" that an order says something that truly appears to contradict what the order in fact says is not clarification at all. It is rewriting. Our review of an agency's interpretation of its own orders is, of course, highly deferential, *see, e.g.*, *Pacific Gas*

15 U.S.C. § 717(c). Congress concluded that Hinshaw pipelines are "matters primarily of local concern," and so are more appropriately regulated by pertinent state agencies rather than by FERC.

Although they are ordinarily outside of FERC's jurisdiction, Hinshaw pipelines "can unquestionably come under FERC authority when [they] engage in activities that go beyond the intrastate transport of gas." *Public Utils. Comm'n of Ca. v. FERC*, 143 F.3d 610, 615 (D.C. Cir. 1998). Nevertheless, FERC has promulgated a regulation that allows Hinshaw pipelines, in limited circumstances, to engage in activities that would otherwise bring them fully within FERC's jurisdiction while still maintaining (for the most part) their status as Hinshaw pipelines. *See* 18 C.F.R. § 228.224. In order to avail itself of the regulation, a Hinshaw pipeline must apply for a blanket "certificate of public convenience and necessity" (the triggering event for full FERC jurisdiction) pursuant to § 7 of the NGA, 15 U.S.C. § 717f, but only with regard to the pipeline's interstate activities.

The Hinshaw pipeline is then permitted to engage in certain interstate activities without being subjected to the full range of the NGA's requirements, which include extensive filing and reporting obligations. In exchange, the activities of the pipeline that would ordinarily subject it to full FERC jurisdiction must be provided without undue discrimination, and at "fair and equitable" rates. The Hinshaw pipeline may then base its rates on the rates for comparable service as approved by the pertinent state regulatory agency, or it must apply to FERC for approval of its proposed rates.

Consumers operates a Hinshaw pipeline pursuant to a "blanket certificate" obtained under 18 C.F.R. § 284.224. On November 23, 1998, Consumers petitioned FERC for approval to decrease its previously authorized rate for interruptible natural gas transportation services. FERC approved the proposed reduction, but its order required Consumers to file, on or before December 1, 2001, and then again at three-year intervals, petitions "for rate approval to

justify its current rate or to establish a new maximum rate." Consumers requested a rehearing, essentially arguing that FERC exceeded its statutory authority by placing on Consumers the burden of justifying its rate as fair and equitable. Under the appropriate section of the NGA, Consumers argued, it is FERC that must shoulder the burden of showing that Consumers's rate is unfair or inequitable.

FERC denied the request for rehearing, reasoning that because Consumers is not subject to the full array of reporting obligations that apply to interstate pipelines, it was important to require Consumers to periodically turn over relevant information so that FERC could ensure the continued fairness and equitability of Consumers's rate. If Consumers did not want to file to reestablish its rate every three years, FERC concluded, Consumers was free to file a blanket application under § 7 and be treated like an interstate pipeline, "with all of the attendant regulatory obligations."

This petition for review followed. Consumers maintains that it was not, and is not, objecting to being required to provide FERC with information so that FERC can formulate informed conclusions about the fairness and equitability of Consumers's rate. Rather, Consumers insists, it is objecting to what it perceives to be an attempt by FERC to justify its order as a valid exercise of FERC's authority under § 4 of the NGA, 15 U.S.C. § 717c. (Section 4 applies when a natural gas company files for a rate change; Section 5 applies when FERC "take[s] the initiative and determine[s] that rates already filed are not just and reasonable . . . . The unifying principle is that the proponent of change bears the burden." *Public Serv. Comm'n of N.Y. v. FERC*, 866 F.2d 487, 488 (D.C. Cir. 1989)). Had FERC issued its order under § 5 of the NGA, 15 U.S.C. § 717d—which Consumers maintains was actually the only proper basis of authority for FERC's order—FERC would have to shoulder the burden of establishing that Consumers's rate is unfair or inequitable. Moreover, under § 5 of the NGA, rate changes may only be imposed prospectively. Section 4 permits certain retroactive adjustments.

## II. ANALYSIS

This is one of those peculiar cases in which it is not easy to understand what the litigants are disputing. Consumers and FERC agree that under § 10(a) of the NGA, 15 U.S.C. § 717i(a), FERC can require Consumers to provide it with information at regular intervals. They also agree that if FERC wants to revise Consumers's rates, FERC will have to bear the burden of justifying any change, as it must under § 5 of the NGA.

The only apparent source of contention is Consumers's suspicion that FERC was trying to slide through an attempt to regulate it under § 4 of the NGA, rather than under § 5. It would not be the first time that FERC has utilized such a tactic. *See, e.g.*, *Public Serv. Comm'n of N.Y.*, 866 F.2d at 488-89 ("On four occasions in the last three years this court has reviewed Commission efforts to compromise § 5's limits on its power to revise rates. On each the court has repelled the Commission's gambit. This is number five."); *Western Resources, Inc. v. FERC*, 9 F.3d 1568, 1578 (D.C. Cir. 1993) ("We now make it an even six."). Consumers claims that only after it petitioned this court for review has FERC taken the position that the challenged order rests on FERC's § 5 powers, rather than on § 4.

FERC argues that Consumers "fundamentally miscomprehends the challenged orders," contending that FERC was not purporting to act under its § 4 power. After all, FERC points out, § 10(a) of the NGA, 15 U.S.C. § 717i(a), explicitly authorizes FERC to demand that pipeline companies such as Consumers periodically file information with FERC so that FERC can satisfy its obligations under § 5 of the NGA. *See* 15 U.S.C. § 717i(a) ("Every natural-gas company shall file with the Commission such . . . reports as the Commission may . . . prescribe as necessary or appropriate to assist the Commission in the proper administration of this chapter. The Commission may . . . require from such natural-gas companies specific answers to all questions upon which the Commission may need information."). According to