# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51343

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2016

Lyle W. Cayce
Clerk

STEVE COOPER,

Plaintiff,

versus

TEXAS ALCOHOLIC BEVERAGE COMMISSION,

Defendant,

and

FINE WINE & SPIRITS OF NORTH TEXAS, L.L.C.;
SOUTHERN WINE AND SPIRITS OF TEXAS, INCORPORATED,

Intervenor Plaintiffs-Appellees,

versus

TEXAS PACKAGE STORES ASSOCIATION, INCORPORATED,

Intervenor Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JONES and SMITH, Circuit Judges, and FITZWATER,* District Judge.
JERRY E. SMITH, Circuit Judge:

The Texas Package Stores Association ("TPSA") moved for relief from an injunction under Federal Rule of Civil Procedure 60(b). The district court denied the motion for want of jurisdiction. Because there is jurisdiction, we

---

* District Judge of the Northern District of Texas, sitting by designation.

No. 14-51343

reverse the order denying the motion on jurisdictional grounds and render an order denying it on the merits.

## I. Factual Background and Procedural History

More than twenty-five years ago, Richard Wilson and Steve Cooper (the "original plaintiffs") tried to acquire K.S. Enterprises, Inc. d/b/a Baby Dolls, a nightclub, but were unable to complete the transaction because of provisions of the Texas Alcoholic Beverage Code (the "Code"). Texas regulates the sale and importation of alcoholic beverages through a three-tier distribution system. The first tier consists of producers such as distillers and wineries, which are required to sell their products to the second tier, made up of state-licensed wholesalers. The second tier, in turn, distributes products to the third tier, comprising state-licensed retailers, which sell to consumers. The problem for the original plaintiffs was that the Code imposes a durational-residency requirement—at the time three years, later changed to one year—on holders of mixed-beverage permits and majority shareholders of corporations with mixed-beverage permits.

The Texas Alcoholic Beverage Commission (the "Commission") may refuse a permit to any applicant who has not been a citizen of Texas for at least one year before filing the application,[1] and it may cancel a permit if an applicant does not satisfy the residency requirement.[2] If there has been a change

---

[1] TEX. ALCO. BEV. CODE ANN. § 11.46(a)(11) (West 2016) ("The commission or administrator may refuse to issue an original or renewal permit with or without a hearing if it has reasonable grounds to believe and finds that . . . the applicant is not a United States citizen or has not been a citizen of Texas for a period of one year immediately preceding the filing of his application, unless he was issued a permit or renewal permit on or before September 1, 1948, and has at some time been a United States citizen . . . .").

[2] TEX. ALCO. BEV. CODE ANN. § 11.61(b)(19) (West 2016) ("The commission or administrator may suspend for not more than 60 days or cancel an original or renewal permit if it is found, after notice and hearing, that . . . the permittee is not a citizen of the United States or has not been a citizen of Texas for a period of one year immediately preceding the filing of

## No. 14-51343

in corporate control, the Commission cannot renew the permit unless the new majority shareholders have satisfied all the requirements for a permit, including the residency requirement.[3]  Finally, the Code states,

> No person who has not been a citizen of Texas for a period of one year immediately preceding the filing of his application therefor shall be eligible to receive a permit under this code.  No permit except a brewer's permit, and such other licenses and permits as are necessary to the operation of a brewer's permit, shall be issued to a corporation unless the same be incorporated under the laws of the state and unless at least 51 percent of the stock of the corporation is owned at all times by citizens who have resided within the state for a period of one year . . . .  Partnerships, firms, and associations applying for permits shall be composed wholly of citizens possessing the qualifications above enumerated.  Any corporation (except carrier) holding a permit under this code which shall violate any provisions hereof, or any rule or regulation promulgated hereunder, shall be subject to forfeiture of its charter . . . .[4]

Because the original plaintiffs were not Texas citizens,[5] they could not acquire Baby Dolls without endangering the business's mixed-beverage permit and, in turn, its profitability.  To avoid that harm, the original plaintiffs brought a 42 U.S.C. § 1983 suit against W.S. McBeath, the administrator of

---

his application, unless he was issued an original or renewal permit on or before September 1, 1948, and has been a United States citizen at some time . . . .").

[3] TEX. ALCO. BEV. CODE ANN. § 28.04 (West 2016) ("(a) A mixed beverage permit held by a corporation may not be renewed if the commission or administrator finds that legal or beneficial ownership of over 50 percent of the stock of the corporation has changed since the time the original permit was issued. . . .  (d) This section does not apply to a change in corporate control . . . (2) brought about when legal or beneficial ownership of over 50 percent of the stock of the corporation has been transferred: (A) to a person who possesses the qualifications required of other applicants for permits and is currently an officer of the corporation and has been an officer of the corporation ever since the date the original permit was issued; or (B) if the permittee notifies the commission . . . of the proposed transfer prior to the date the transfer is to become effective and the commission does not find that circumstances exist that would be grounds for the denial of a renewal of the permit under Section 11.46 and provided the ownership of the corporation immediately after the transfer satisfies the requirements of this code. . . .").

[4] TEX. ALCO. BEV. CODE ANN. § 109.53 (West 2016).

[5] Wilson was a citizen of Tennessee, Cooper a citizen of Florida.

3

No. 14-51343

the Commission, seeking declaratory and injunctive relief.[6]   Three trade groups, among them TPSA, were granted leave to intervene as defendants.

On cross-motions for summary judgment, the district court determined that Texas's residency requirement was a protectionist provision invalid under the Commerce Clause and the Privileges and Immunities Clause and that the Twenty-first Amendment did not save the requirement.   The court thus declared the residency requirement invalid and permanently enjoined the Commission from enforcing it.[7]   This court's affirmance was based only on the Commerce Clause, and we declined to address the Privileges and Immunities Clause.  *Cooper*, 11 F.3d at 556 n.10.

The present round began in 2014, when TPSA moved under Rule 60(b) for relief from the injunction based on a significant change in decisional law. The Commission did not join in TPSA's motion, nor did the original plaintiffs appear or file a response.  Two out-of-state corporations—Fine Wine & Spirits of North Texas, L.L.C. ("Fine Wine"), and Southern Wine and Spirits of Texas, Inc. ("Southern Wine")—moved to intervene as plaintiffs.  After granting intervention, the district court denied TPSA's Rule 60(b) motion for lack of subject-matter jurisdiction.  It held that there was no case or controversy because the original plaintiffs had not appeared and seemed to lack an ongoing interest and because TPSA lacked standing.  The court thus declined to reach the merits but suggested that the Rule 60(b) motion should be denied on the

---

[6] *See Wilson v. McBeath*, No. A-90-CA-736, 1991 WL 540043 (W.D. Tex. June 13, 1991), *aff'd sub nom. Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994).

[7] TPSA incorrectly contends that the injunction binds not only the Commission but also TPSA.  The district court granted "the Plaintiffs' Application for a Permanent Injunction[.]" *Wilson*, 1991 WL 540043, at *11.  The original plaintiffs' application for a permanent injunction, though, never sought relief against TPSA but instead requested an injunction against "McBeath, his agents and employees from enforcing the challenged provisions"—in other words, the Commission under the fiction of *Ex parte Young*, 209 U.S. 123 (1908).  We thus speak of the injunction as running against the Commission.

4

No. 14-51343

merits.

## II. Jurisdiction

The district court gave two reasons why it lacked subject-matter jurisdiction. First, TPSA had failed to establish that the original plaintiffs continued to have a stake in the case. Second, TPSA lacked standing to bring a Rule 60(b) motion.

## A. Mootness

The original plaintiffs have not appeared and may no longer possess any direct stake in the outcome of this proceeding. Nevertheless, there remains a live case or controversy because of the intervention of Fine Wine and Southern Wine. Their intervention ensures that this proceeding involves an actual dispute between adverse litigants.

Even if that intervention were not enough, a live case or controversy would still remain on account of the injunction. An Article III case or controversy requires at least two adverse parties.[8] For that reason, a federal judicial proceeding generally becomes moot if all the plaintiffs or all the defendants withdraw from or lose their concrete interest in the proceeding. That rule does not hold, however, where a court has entered a permanent injunction or some other equitable decree with prospective application.[9] The reason is that "federal courts have inherent equitable power to modify their own decrees." *League*

---

[8] *See* 13 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3530, at 673–75 (3d ed. 2008) ("The most elemental requirement of adversary litigation is that there be two or more parties. There must be a real plaintiff at the inception of the suit, and there may be some requirement that the plaintiff remain interested as the litigation proceeds. There also must be an identifiable defendant . . . ." (footnotes omitted)).

[9] *See Tory v. Cochran*, 544 U.S. 734, 736–37 (2005) (holding that the ongoing permanent injunction in a defamation suit prevented the plaintiff's death from mooting the defendant's appeal).

No. 14-51343

*of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 436 (5th Cir. 2011). "The power of a federal court that enters an equitable injunction is not spent simply because it has once spoken. The federal courts have always affirmed their equitable power to modify any final decree that has prospective application." *Id.*

The permanent injunction remains in effect, even absent the original plaintiffs. The injunction continues to prohibit the Commission from enforcing Texas's residency requirement against not only the original plaintiffs but also all other out-of-state persons who possess or wish to acquire a Texas mixed-beverage permit or an interest in an entity with such a permit. The prospective application of the injunction thus prevents this case from becoming moot.

## B. Standing

TPSA has standing to bring its Rule 60(b) motion. Because it is an intervenor, its "right to continue a suit in the absence of the [Commission] is contingent upon a showing by the intervenor that [it] fulfills the requirements of Art. III." *Diamond v. Charles*, 476 U.S. 54, 68 (1986). In other words, TPSA must demonstrate that it has standing in its own right and cannot rely on the Commission's standing.[10]

The question whether TPSA possesses standing turns ultimately on the standing of its members. As a trade association, it must satisfy three criteria. First, "its members [must] otherwise have standing to sue in their own right." *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012). Second, "the interests [it] seeks to protect

---

[10] *See Goldin v. Barrow*, 166 F.3d 710, 720 n.12 (5th Cir. 1999) ("[W]hile intervenors may proceed under Rule 24 without meeting the standing requirements, if they are the sole party to take an appeal they must independently satisfy Article III.").

No. 14-51343

[must be] germane to the organization's purpose." *Id.* Third, "neither the claim asserted nor the relief requested [must] require[] the participation of individual members in the lawsuit." *Id.*

There is no question that TPSA satisfies the second and third criteria for associational standing. The interests of TPSA's members in the enforcement of the residency requirement are germane to TPSA's purpose, and neither TPSA's claim for relief nor the relief it requests requires the participation of its individual members. Thus the only issue is whether its members have standing in their own right.

Under the traditional test for standing, a litigant must show (1) that it has "suffered an 'injury in fact,'" (2) the injury complained of is "fairly traceable to the challenged action of the [opposing party], and not the result of the independent action of some third party not before the court," and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The district court concluded, for two reasons, that TPSA had failed to make that showing for its individual members. First, "having to compete in a free and fair marketplace is not an injury[.]" Second, TPSA's requested relief—lifting the injunction—would not remedy the alleged injury, because "[a]ll that would change is the origin of those men and women who controlled [TPSA's] competitors. TPSA's members would not suddenly find themselves in control of monopoly power. Other, different competitors would fill the vacuum." We disagree with the district court's reasoning and conclusions.

1. Injury in fact

There is no question that TPSA has "a 'direct stake in the outcome' of the

7

case."[11]   TPSA's interest in Texas's residency requirement is not that of a person seeking to vindicate the constitutional validity of a generally applicable law, but rather that of a market participant seeking the enforcement of a law that, if not enjoined, would apply to both it and its competitors.  The only question with regard to the injury-in-fact prong of the standing inquiry is thus whether TPSA's alleged injury—increased economic competition from out-of-state business—qualifies as an injury in fact.  It does.

Economic competition in a free market is not ordinarily an injury in fact, but it becomes so where, as here, a statute entitles members of an industry to reduced competition.  It is a "basic law of economics" that increased competition leads to actual economic injury.[12]  For that reason, numerous courts have upheld the standing of competitors to challenge official actions that change the amount of competition in an economic actor's market.[13]

"[T]the regulatory allowance of increased competition in a plaintiff's market" qualifies "as a clear injury-in-fact."[14]  Because an injunction prohibiting the enforcement of regulatory restrictions on competitors has the same effect on the level of competition in a market as does an agency decision to lift regulatory restrictions on competitors, an injunction in these circumstances

---

[11] *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).

[12] *New World Radio, Inc. v. F.C.C.*, 294 F.3d 164, 172 (D.C. Cir. 2002); *accord Adams v. Watson*, 10 F.3d 915, 923–24 (1st Cir. 1993).

[13] *E.g.*, *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 620 (1971); *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152–154 (1970); *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) ("[E]conomic actors 'suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998))); *Pac. Gas Transmission Co. v. FERC*, 998 F.2d 1303, 1307 n.4 (5th Cir. 1993).

[14] *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 217 (5th Cir. 2008) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983 (5th Cir. Unit A July 1981); *Hollingsworth v. Harris*, 608 F.2d 1026, 1028 (5th Cir. 1979)).

No. 14-51343

also qualifies as an injury in fact. In both cases, there is real harm. There is no principled basis for regarding the agency decision but not the court injunction as resulting in an injury in fact.

## 2. Redressability

The district court concluded that TPSA also failed the redressability prong of the standing inquiry. The court reasoned that, even if the injunction were lifted, none of TPSA's members would obtain monopoly power, and its members would still have to compete with new in-state entrants into the retail liquor business.

We disagree. In other competitor-standing cases, where an economic actor challenged an agency's lifting of a regulatory restriction on competitors, courts have held that reintroduction of the regulatory restriction can redress the injury.[15] The same logic indicates that the injury complained of here—increased competition with out-of-state permittees—can be redressed by dissolving the injunction. There is no requirement that TPSA show that it or its members will acquire monopoly power in the retail liquor market.

We also disagree with the notion, urged by Fine Wine and Southern Wine, that TPSA's injury is not redressable absent the Commission's participation in the proceeding. Fine Wine and Southern Wine maintain that a party may not challenge an injunction when it is not the enjoined party. Many of the cases they cite, however, merely stand for the proposition that a party does not have standing to challenge a judgment by which it is not aggrieved.[16] That

---

[15] *E.g.*, *Sherley*, 610 F.3d at 72; *La. Energy*, 141 F.3d at 367; *Pac. Gas*, 998 F.2d at 1307 n.4.

[16] In *Princeton University v. Schmid*, 455 U.S. 100 (1982), the Court held that the university lacked standing to appeal the conviction of the defendant where the State of New Jersey did not urge reversal. The free-speech issue in which the school was interested was moot because it had changed its regulations. The state-court judgment thus did not affect its

9

line of cases does not apply here, because, as shown above, the injunction causes TPSA injury in fact.

The other cases relied on by Fine Wine and Southern Wine deal with limitations on a court's ability to grant relief under the Federal Rules of Appellate Procedure. They cite *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107 (4th Cir. 2013), for the proposition that "a 'judgment will not be altered on appeal in favor of a party who did not appeal'—a rule that applies even if 'the interests of the party not appealing are aligned with those of the appellant.'" *Id.* at 116 (quoting 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 204.11[4] (2d ed. 1980)); *accord Cabral v. City of Evansville*, 759 F.3d 639, 643 (7th Cir. 2014). But that rule does not hold in the instant case.

To begin with, Fifth Circuit caselaw permits this court to alter a judgment or order in favor of a non-appealing party. We may do so "when the reversal 'wipes out all basis for recovery against the nonappealing, as well as against the appealing defendant; when the failure to reverse with respect to the nonappealing party will frustrate the execution of the judgment in favor of the successful appellant; or when the appealed decision could reasonably be read as not being adverse to the nonappealing party." *Anthony v. Petroleum Helicopters, Inc.*, 693 F.2d 495, 497–98 (5th Cir. 1982) (citations omitted).

legal rights. Moreover, the university "d[id] not claim standing on the ground that a private party may intervene and challenge the reversal of a criminal conviction of another party." *Id.* at 103.

In *Diamond*, a pediatrician seeking to defend Illinois's abortion law was held to lack standing in his own right because "a private party whose own conduct is neither implicated nor threatened by a criminal statute has no judicially cognizable interest in the statute's defense," 476 U.S. at 56, and "Diamond [was] not able to assert an injury in fact," *id.* at 65.

In *Hollingsworth*, the intervenors were found to lack standing, not because their claim was unredressable, but because they lacked an injury in fact. "[P]etitioners had no 'direct stake' in the outcome of their appeal. Their only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable California law." 133 S. Ct. at 2662.

10

No. 14-51343

Second, numerous cases have permitted a non-enjoined party to appeal an injunction when the enjoined party is the government.[17]  Fine Wine and Southern Wine cite *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000), as authority to the contrary.  "Because the [state alcoholic beverage] Commission has not appealed, it remains bound by the injunctions no matter what happens on the [intervenor defendants'] appeals, so it is not clear what point the [intervenor defendants'] appeals can serve."  *Id.* at 997.  Yet *Kendall-Jackson* explicitly recognized that the appellants would have had standing if they had possessed a private right of action.[18]

Under *Kendall-Jackson*, there is no redressability problem where, as

---

[17] *E.g.*, *Mausolf v. Babbitt*, 125 F.3d 661 (8th Cir. 1997) (intervenors permitted to appeal injunction of National Park Service regulations); *Nat'l Wildlife Fed'n v. Lujan*, 928 F.2d 453 (D.C. Cir. 1991) (intervenor defendants permitted to appeal order invalidating regulations promulgated by the Secretary of the Interior).

[18] The *Kendall-Jackson* court, 212 F.3d at 998–99, explained that

the [intervenor defendants] miss the real problem: redressability.  Sure the injunction injures them, but how can their appeal redress that injury given that the injunction will continue to bind the Commission?  See *Sea Shore Corp. v. Sullivan*, 158 F.3d 51 (1st Cir. 1998); *Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994); *McLaughlin v. Pernsley*, 876 F.2d 308 (3d Cir. 1989).  When a statute creates a private right of action, it is possible to see how such a question may be answered affirmatively.  Consider *Mausolf v. Babbitt*, 125 F.3d 661 (8th Cir. 1997), in which the district court enjoined the National Park Service from enforcing certain regulations, and the Park Service did not pursue an appeal.  Private parties that had intervened in the case sensibly were allowed to appeal, not simply because the injunction injured them (to the extent the regulations had helped them) but because federal regulations may be enforced by private parties by suits against the agencies (under the Administrative Procedure Act) and by suits against private parties under the federal-question jurisdiction to the extent a statute or regulation creates a private right of action, or under 42 U.S.C. § 1983 to the extent the defendant is a state actor.  See *Maine v. Thiboutot*, 448 U.S. 1 . . . (1980).  Many cases are similar in spirit to *Mausolf*, and we do not question their holdings.  Likewise, a union or employer that prevails before the National Labor Relations Board may ask the Supreme Court to review a decision refusing to enforce that order, even though the Board's General Counsel has absolute prosecutorial discretion not to file a charge of unfair labor practices.  After a charge has been filed, the Board has dual roles as prosecutor and adjudicator, and private parties acquire rights in the Board's final decisions that are enforceable even if the Board is content to see its orders annulled.  29 U.S.C. § 160(f).

No. 14-51343

here, the intervenor can sue the state to enforce the law at issue. The Code gives "[a]ny package store permittee who shall be injured in his business or property by another package store permittee by reason of anything prohibited in [the residency requirements the right to] institute suit . . . to require enforcement by injunctive procedures and/or to recover threefold the damages by him sustained." TEX. ALCO. BEV. CODE ANN. § 109.53. Consequently, TPSA's members, which are all package store permittees, have a private right of action and may appeal an injunction of the residency requirement even if the Commission does not appeal.

Third, the cases mentioned above do not concern a district court's authority under Rule 60(b) to grant relief that would simultaneously benefit a non-moving party such as the Commission. Instead, those decisions deal solely with an appellate court's ability to grant relief on direct appeal under Federal Rule of Appellate Procedure 4(a)(3), whose requirements have sometimes been held to be jurisdictional, though not necessarily in this circuit.[19] The sole question with regard to redressability here, however, is whether the district court is able to grant relief to TPSA under Rule 60(b). Because that is possible, there was no redressability problem in the district court, and there is none on appeal either, given that we may redress TPSA's injury by reversing. TPSA has standing.

### III. Merits

In light of the fact that both the district court and this court have subject-matter jurisdiction, we can decide the Rule 60(b) motion now, on appeal, as

---

[19] *See* 20 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 304.11[3][d] (3d ed. 2015); *id.* at 304-32 n.28 (citing Fifth Circuit cases describing Rule 4(a)(3) as only a rule of practice); *Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, No. 98-20274, 1998 U.S. App. LEXIS 39029, at *5 & n.4 (5th Cir. Nov. 18, 1998) (unpublished) (questioning the continuing validity of the rule-of-practice analysis).

No. 14-51343

wholly an issue of law: whether continuing the injunction is unjust in light of *Granholm v. Heald*, 544 U.S. 460 (2005). Under Rule 60(b)(5), a district court has the discretion to "relieve a party or its legal representative from a final judgment, order, or proceeding" if "applying it prospectively is no longer equitable." If the relief sought is dissolution or modification of an injunction, the district court may "grant a Rule 60(b)(5) motion when the party seeking relief . . . can show 'a significant change . . . in [statutory or decisional] law.'"[20] "The party seeking relief has the burden of establishing that changed circumstances warrant relief, but once the party has done that, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes."[21]

The key question is whether *Heald* was a significant change in decisional law warranting relief from the injunction under Rule 60(b)(5). It was not.

### A. Dormant Commerce Clause

The Commerce Clause operates both positively and negatively. Positively and explicitly, it confers on Congress the power "[t]o regulate commerce . . . among the several States[.]" U.S. CONST. art. I, § 8, cl. 3. Negatively and by implication, it restricts the power of the states to regulate interstate commerce. This "dormant" aspect "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

We use a two-pronged inquiry when determining whether a state

---

[20] *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)).

[21] *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Inmates of Suffolk Cty. Jail*, 502 U.S. at 383, and quoting *Agostini*, 521 U.S. at 215) (internal citation omitted).

No. 14-51343

economic regulation violates the Commerce Clause.

> When a state statute directly regulates or discriminates against inter-state commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court] ha[s] generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Court] ha[s] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (internal citations omitted). Because "[s]tate laws that constitute mere economic protectionism are . . . not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor," *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 276 (1984), the Court applies this framework regardless of whether the state regulation deals with alcohol. Where alcohol is at issue, however, we further ask "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwith-standing that its requirements directly conflict with express federal policies." *Id.* at 275–76 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714 (1984)).

In *Wilson* and *Cooper*, both the district court and this court applied the typical two-pronged inquiry from *Bacchus*, *Brown-Forman*, and other cases to find that Texas's residency requirement violates the Commerce Clause. The instant Rule 60(b)(5) motion does not allow TPSA to relitigate the legal conclu-sions on which *Wilson* and *Cooper* rest.[22] The current procedural posture does, however, allow TPSA to urge that there has been a significant change in

---

[22] *See Flores*, 557 U.S. at 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests[.]").

No. 14-51343

decisional law warranting relief from the injunction.  The question is whether TPSA correctly contends that there has, in fact, been that significant change.  We answer in the negative.

According to TPSA, *Heald* constitutes a significant change in decisional law warranting relief under Rule 60(b)(5).  *Heald*, however, did not expressly alter the standard for reviewing Commerce Clause challenges to state alcohol regulations.  To the contrary, there the Court explicitly "declined" the invitation to overrule or limit *Bacchus*, because "*Bacchus* does not stand alone in recognizing that the Twenty-first Amendment did not give the States complete freedom to regulate where other constitutional principles are at stake." *Heald*, 544 U.S. at 488.  "A retreat from *Bacchus* would also undermine *Brown-Forman* and *Healy* [*v. The Beer Institute*, 491 U.S. 324 (1989)]." *Id.*  The Court was thus unwilling to undermine those precedents.

Notwithstanding the Supreme Court's express refusal to question its precedent on the interaction between the Commerce Clause and the Twenty-first Amendment, TPSA opines that *Heald* implicitly changed the standard for analyzing Commerce Clause challenges to state alcohol regulations.  In the course of addressing the constitutionality of residency requirements on out-of-state producers, the Court addressed the objection "that any decision invalidating the[ states'] direct-shipment laws would call into question the constitutionality of the three-tier system." *Id.* at 489.  The Court rejected that idea:

> This does not follow from our holding.  "The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." [*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)].  A State which chooses to ban the sale and consumption of alcohol altogether could bar its importation; and, as our history shows, it would have to do so to make its laws effective.  States may also assume direct control of liquor distribution through state-run outlets or funnel sales through the three-tier system.  We

15

have previously recognized that the three-tier system itself is "unquestionably legitimate." *North Dakota v. United States*, 495 U.S. [423,] 432 . . . [(1990) (plurality opinion)]. See also *id.*, at 447 (Scalia, J., concurring in judgment) ("The Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler"). State policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent. The instant cases, in contrast, involve straightforward attempts to discriminate in favor of local producers.

544 U.S. at 488–89 (last alteration in original)

TPSA interprets this *dictum* as essentially stripping away Commerce Clause protections for state alcohol regulations that deal with the retailer or wholesaler tiers rather than with the producer tier. All that the Commerce Clause requires, TPSA says, is that a state treat liquor produced out-of-state the same as liquor produced in-state. In support of that theory, TPSA points to *Southern Wine & Spirits of America v. Division of Alcohol & Tobacco Conrol*, 731 F.3d 799 (8th Cir. 2013). That court upheld a Missouri statute imposing residency requirements on wholesalers that was somewhat analogous to the Texas residency requirement for retailers. Addressing the *dictum* in *Heald*, the court reasoned that "[i]f it is beyond question that States may require wholesalers to be 'in-state' without running afoul of the Commerce Clause, then . . . States have flexibility to define the requisite degree of 'in-state' presence to include the in-state residence of wholesalers' directors and officers, and a supermajority of their shareholders." *Id.* at 810.

TPSA's interpretation of *Heald* is unconvincing. That Court did not purport to change decisional law, and the statute at issue addressed the producer tier of the three-tier distribution system. We thus expressly decline to follow *Southern Wine* and instead adhere to the reading of *Heald* adopted in *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 821 (5th Cir. 2010) (substitute

opinion on petition for rehearing).

In *Wine Country*, we interpreted *Heald* as reaffirming the applicability of the Commerce Clause to state alcohol regulations, but to a lesser extent when the regulations concern the retailer or wholesaler tier as distinguished from the producer tier, of the three-tier distribution system.  *Id.* at 820–21.[23] State regulations of the producer tier "are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent."  *Heald*, 544 U.S. at 489.  But state regulations of the retailer and wholesaler tiers are not immune from Commerce Clause scrutiny just because they do not discriminate against out-of-state liquor.

Because of the Twenty-first Amendment, states may impose a physical-residency requirement on retailers and wholesalers of alcoholic beverages despite the fact that the residency requirements favor in-state over out-of-state businesses. *Wine Country*, 612 F.3d at 821.  The Twenty-first Amendment does not, however, authorize states to impose a durational-residency requirement on the *owners* of alcoholic beverage retailers and wholesalers.  *Id.* (citing *Cooper,* 11 F.3d at 555).  Distinctions between in-state and out-of-state retailers and wholesalers are permissible only if they are an inherent aspect of the three-tier system.  *See id.* at 818.

## B.  Privileges and Immunities Clause

Even if *Heald* and *Southern Wine* did represent a significant change in decisional law for challenges to state alcohol regulations under the Commerce Clause, TPSA's Rule 60(b) motion should still be denied on the merits.  In this

---

[23] *Cf. Heald*, 544 U.S. at 472 ("Time and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." (quoting *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99 (1994))).

regard, TPSA has failed to address the district court's holding that Texas's residency requirement violates the Privileges and Immunities Clause. As the party seeking a remedy, TPSA has the burden to show that relief under Rule 60(b)(5) is warranted. *Frew v. Janek*, 780 F.3d 320, 326–27 (5th Cir. 2015). To do that, TPSA must show that neither ground for the injunction—violation of the Commerce Clause or the Privileges and Immunities Clause—justifies prospective application of the injunction. TPSA has not done that but, instead, has impermissibly attempted to shift the burden of proof to Fine Wine and Southern Wine.

We REVERSE the order denying the Rule 60(b) motion for want of jurisdiction and RENDER an order denying it on the merits, thus avoiding the need for remand.

18

No. 14-51343

JONES, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that TPSA has standing to seek relief from an injunction that bound only state officials in their enforcement of Texas law. As strangers to the original injunction, and parties not directly affected by its continuance, I would hold that the association's claim lacked redressability for standing purposes. I would have dismissed this appeal.

The panel correctly decides that TPSA had to demonstrate its Article III standing to pursue an appeal from the district court's judgment adhering to its injunction against a Texas residency requirement for liquor distributors. *See Diamond v. Charles*, 476 U.S. 54, 68-69, 106 S. Ct. 1697, 1706-07 (1986). Even if TPSA could show two requirements of standing, injury and traceability, I disagree with the majority's conclusion that the association could show that a favorable judgment from this court would relieve the TABC's Commissioner from his obligation to abide by the federal court's injunction.

The Seventh Circuit confronted a factually indistinguishable situation involving a dispute between liquor suppliers and distributors, with the constitutionality of a state regulation at its heart. *In Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000), the court posited the following "critical" question: "when a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B?" *Id.* at 998. The court answered, "No," prefacing its explanation with the observation that an affirmative answer would be "incompatible" with *Diamond v. Charles*. The majority assert that the decisive issue in *Diamond* was merely the individual standing of an Illinois physician who attempted to appeal an injunction against state abortion laws despite the State's refusal to appeal. Because the doctor was not injured by the law, he lacked standing. I disagree with this narrow

19

No. 14-51343

interpretation of *Diamond*; the physician's injury was only a subsidiary point. The Court primarily relied on the principle that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." 476 U.S. at 64, 106 S. Ct. at 1704 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149 (1973)). Characterizing the doctor's interest as "an effort to compel the State to enact a code in accord with [his] interests," the Court explained that, "the power to create and enforce a legal code, both civil and criminal, is one of the quintessential functions of a State." *Id.* at 65, 1705 (internal quotations and citations omitted). Only the State, in other words, has standing to defend the standards embodied in that code. *Id.* I see no distinction between *Diamond* and the position of TPSA in this case. *Diamond* reifies that because only the State was bound by the *Cooper* injunction not to enforce the residency requirement, and TPSA was *not* so bound, the outcome of TPSA's appeal cannot substitute for the State's failure to participate.

The *Kendall-Jackson* court articulated two other grounds for its conclusion. First, the "Commission's decision not to appeal leaves the distributors in the position that they would have occupied had the Commission not entered the orders in the first place." 212 F.3d at 998. Here, by analogy, TPSA's members stand in no worse position now, when the TABC has failed to appeal the district court's Rule 60(b) order, than they occupied during the past nearly twenty years while the injunction has lain unchallenged. The majority does not seem to quarrel with this statement.

Second, because "Illinois does not recognize any private right of action to contest such an enforcement decision by the Commission, it would not be sound to allow the distributors to challenge that decision indirectly." *Id.* In the absence of this specific private right against the *agency*, *Kendall-Jackson* denied the distributors' claim effectively to step into the shoes of the regulatory agency. Reinforcing that the court would have afforded standing only if Illinois

20

law afforded them a claim against the Commission, the court later observes that the distributors could have gone into state court seeking an order requiring the Commission to appeal the federal court injunction. If the distributors won, then "all issues will be presented for resolution on the merits." *Id.* at 1000. If, however, the distributors were "unable to persuade a state court to direct [the Commission] to appeal, that will demonstrate how similar this situation is to *Diamond*." *Id.*

The majority here cling to the court's dictum acknowledging that in certain cases, third parties may challenge regulations enforced by public agencies. As *Kendall-Jackson* opines, "federal regulations may be enforced by private parties . . . by suits against private parties . . . to the extent a statute or regulation creates a private right of action."[1] *Id.* at 998. *The* majority believe this exception to *Kendall-Jackson*'s principal holding applies to TPSA because a statutory provision allows "[a]ny package store permittee" to sue for injury by "another package store permittee" for enforcement of code requirements. TEX. ALCO. BEV. CODE ANN. § 109.53. Allowing suits between competitors, however, is far different from waiving the State's sovereign immunity to allow a permittee to sue the Commission for affirmative enforcement of state law (or to appeal the continuation of the instant injunction). Texas requires a clear legislative statement to effectuate a waiver of state sovereign immunity; this provision does not fill the bill. *See* TEX. GOV'T. CODE ANN. § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.") Put otherwise, the majority's attempt to fit Texas law within the

---

[1] This dictum was distinguished by a recent 7th Circuit panel. *Cabral v. City of Evansville*, 759 F.3d 639, 644 (7th Cir. 2014) ("West Side argues this dictum [quoted above] provides it with standing. But a key element of that speculation is that the private party could bring a suit against the agency or governmental actor . . . .").

21

narrow ambit of *Kendall-Jackson*'s exception fails because a suit to enforce the code's provisions against another private party is wholly different from a suit seeking Rule 60(b) relief from a federal court injunction that binds only the Commission. Because TPSA isn't bound by the injunction, it might even sue Fine Wine and Southern Wine under § 109.53 for "violating" the same local residency provision that was enjoined here! A state court might then have to decide whether to defy the federal court's ruling. This hypothetical proves the point that TPSA's indirect injury from the injunction is not redressable by this court because any judgment in TPSA's favor cannot remove the injunction against the Commissioner.[2]

TPSA's effort on appeal is nothing less than to substitute itself, although not bound by the *Cooper* injunction, for the state authorities who, for whatever reason, did not appeal the continuation of the injunction. This is an end-run around the State's sovereign prerogative to "create and enforce a legal code." *Diamond*, 476 U.S. at 65, 106 S. Ct. at 1705. Texas law does not authorize individuals to enforce the Alcoholic Beverage Code, in essence, against the State. A judgment by this court favoring TPSA neither relieves TPSA of any burden nor effectuates relief against the Commissioner. We lack jurisdiction to adjudicate this appeal.

---

[2] TPSA concedes that the injunction prevents the state Attorney General from performing his nondiscretionary duty to enforce the code when a party like TPSA brings a violation to his attention, TEX. ALCO. BEV. CODE ANN. § 109.53, but an injunction against the enforcement authority simply does not run against TPSA.