# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2016

Lyle W. Cayce
Clerk

No. 16-50041

WAL-MART STORES, INCORPORATED; WAL-MART STORES TEXAS, L.L.C.; SAM'S EAST, INCORPORATED; QUALITY LICENSING CORPORATION,

Plaintiffs—Appellees,

v.

TEXAS ALCOHOLIC BEVERAGE COMMISSION, et al.,

Defendants,

TEXAS PACKAGE STORES ASSOCIATION, INCORPORATED,

Movant—Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before KING, JOLLY, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The Texas Package Stores Association ("the Association"), a trade group representing holders of permits allowing liquor retailing in the state of Texas, seek to intervene in a lawsuit between Wal-Mart and the Texas Alcoholic Beverage Commission ("the Commission"). Wal-Mart alleges that the regulatory system administered by the Commission operates exclusively for the benefit of the Association's members in violation of the Equal Protection, Commerce, and Comity Clauses of the United States Constitution. The

No. 16-50041

Association seeks to intervene in defense of the regulatory system. Because the Association satisfies the relevant requirements, we REVERSE and GRANT the Association's motion to intervene as of right.

## I.

Texas has a comprehensive licensing and regulatory scheme governing the sale of alcoholic beverages. *See* Tex. Alco. Bev. Code §§ 22.01–22.17. Only holders of a package store permit are allowed to market liquor at retail prices to consumers for off-premises consumption. Tex. Alco. Bev. Code § 22.01. Texas severely restricts ownership of package store permits. No individual or corporation may own more than five package store permits except that persons "related within the first degree of consanguinity" may consolidate legal entities under their control regardless of the number of permits held by those entities and may continue to hold as many permits in the combined entity as were held by the separate predecessor entities, Tex. Alco. Bev. Code §§ 22.04, 22.05. Public corporations are prohibited from owning package store permits and franchised businesses are effectively prohibited from holding permits. Tex. Alco. Bev. Code §§ 22.15, 22.16.

Wal-Mart's complaint alleges that this system is a protectionist scheme enacted for the benefit of existing permit holders. After the district court denied the Commission's motion to dismiss, and three months after Wal-Mart filed its Answer, the Association moved to intervene in the lawsuit. At the time the Association moved for intervention, discovery had opened but Wal-Mart had produced no documents and no depositions had been taken. The district court denied the Association's motion to intervene.

The Association appeals.

## II.

Rule 24(a) permits a party to seek intervention as of right while Rule 24(b) allows a party to seek permissive intervention. Fed. R. Civ. P. 24. "A

ruling denying intervention of right is reviewed *de novo.*" *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996)). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* (internal quotation marks omitted). "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks omitted).

To obtain intervention as of right, an intervenor must satisfy a four-prong test:

> (1) the application . . . must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas*, 805 F.3d at 657 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).

The timeliness inquiry "is contextual; absolute measures of timelines should be ignored." *Espy*, 18 F.3d at 1205. Timeliness "is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (quoting *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977)). Because the Association sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the Association's motion was timely.[1] *See Flying J. Inc. v.*

---

[1] Because the district court's only discussion of timeliness took place as part of its permissive intervention analysis, and because the standards for timeliness under the two paths for intervention differ, we decide the question of timeliness *de novo. See Stallworth,*

No. 16-50041

*Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (concluding intervention after final judgment was timely because intervenor sought only to appeal and not to re-litigate issues already resolved); *Espy*, 18 F.3d at 1205–06 (concluding intervention to appeal after entrance of injunction was timely because inadequacy of representation did not become apparent until then even though intervenor had actual knowledge of suit).

We are also satisfied that the Association has an interest relating to the subject of the action and that disposition of the action may impair or impede the Association's ability to protect that interest. The Association asserts that the "property or transaction that is the subject of the action" in this case is the regulatory system governing package stores including the licenses held by the Association's members. Wal-Mart's case is premised on the argument that the system exists solely and illegally for the benefit of the Association—the lawsuit is premised on the assumption that the Association's members are the beneficiaries of this regulatory system.

Although "[t]here is not any clear definition of the nature of the 'interest . . .' that is required for intervention of right," our precedent has set guiding principles that dictate the outcome of this case. 7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1908.1 (3d ed. 2007).[2] The touchstone of the inquiry is whether the interest alleged is "legally protectable." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* (*NOPSI*), 732 F.2d 452, 464 (5th Cir. 1984) (en banc). "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor

---

558 F.2d at 263 ("[T]he district court should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under section (a) than if he qualifies for intervention under section (b).").

[2] "The 'interest' test is primarily is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."*Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659.

Because we must assess whether the Association has a "legally protectable" interest, we find helpful a recent decision holding that the Association—participating in a similar challenge to the regulatory system as an intervenor—has standing to continue that lawsuit without the participation of the Commission. *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 737 (5th Cir. 2016). Because the direct holding of *Cooper* is that the Association can legally protect this regulatory system, it likely has an interest in the subject matter of this litigation.[3]

Even without the guidance provided by *Cooper*, our precedent dictates that the Association has a legally protectable interest in the regulatory scheme because, according to Wal-Mart, the Association is the scheme's beneficiary. This puts the Association in a position comparable to other successful intervenors in our circuit. For example, in *Texas*, women who potentially qualified for deferred action status sought to intervene in a lawsuit challenging the federal government's policies for granting deferred action. 805 F.3d at 660. We permitted the intervention because the women were the "intended beneficiaries" of the policy under challenge even though the intervenors had neither applied for nor received the benefit. *Id.* We have also held that "public spirited" civic organizations that successfully petition for adoption of a law may intervene to vindicate their "particular interest" in protecting that law. *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). Under

---

[3] We have previously suggested that "a movant who shows standing is deemed to have a sufficiently substantial interest to intervene." *LULAC v. City of Boerne*, 659 F.3d 421, 434 n.17 (5th Cir. 2011) (quoting *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1480 (11th Cir. 1993), *abrogated on other grounds Dillar v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1331–32 (11th Cir. 2007))

No. 16-50041

*American Traffic Solutions* and *Texas*, the Association has an interest in protecting its legally prescribed market.

Our conclusion is in keeping with those of our sister circuits, which recognize that associations representing licensed business owners have a right to intervene in lawsuits challenging the regulatory scheme that governs the profession. In one such lawsuit the Second Circuit concluded that "clearly the [association] ha[s] an interest in the transaction which is the subject of the action" because "[t]here can be no doubt that the challenged prohibition . . . affects the economic interests of members of the pharmacy profession. *Pharmacists also have an interest in a regulation which they claim is designed to encourage 'the continued existence of independent local drugstores by the prevention of destructive competition . . . .'*" *N.Y. Pub. Int. Research Grp, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351–52 (2d. Cir. 1975) (quoting *Urowsky v. Board of Regents*, 349 N.Y.S.2d 600, 603 (N.Y. Sup. Ct. 1973)) (emphasis added). In another lawsuit challenging state liquor licensing regulations, a federal court in Massachusetts concluded that the intervening association's had a sufficient interest in the litigation because

> [e]limination of § 15's three license limit will affect MassPack members themselves, potentially enabling them to get licenses for more than three stores, and, more importantly for them, *may change the number and nature of their competitors*. MassPack's interest in this case is not a general one; the regulation in question governs its members directly, and their interests are different from those of the general public or of any business outside of the liquor retail sector. Indeed 'preserving the right of small, independent liquor dealers to do business' is one of the recognized purposes of the three license restriction.

*Mass. Food Ass'n v. Sullivan*, 184 F.R.D. 217, 221–22 (D. Mass. 1999) (quoting *Johnson v. Martignetti*, 375 N.E.2d 290, 297 (Mass. 1978)) (emphasis added). Most recently, Judge Posner, writing for a unanimous Seventh Circuit panel, permitted intervention by an association of independent gas station owners

precisely because they sought to preserve legislation that limited competition. *Flying J.*, 578 F.3d at 572 ("Wisconsin's 'Unfair Sales Act' is special-interest legislation and the special interest is that of retailers who wish, naturally enough, to limit price competition. They are the statute's direct beneficiaries . . . .").

Wal-Mart argues that *NOPSI* forecloses the Association's intervention, but its argument misreads the law and facts of that case. *NOPSI* did not create a bar preventing all intervention premised on "economic interests." Such a rule would be inconsistent with Supreme Court precedent permitting intervention based on economic interests. *See, e.g.*, *Bryant v. Yellen*, 447 U.S. 352, 366–67 (1980) (allowing intervention by individuals who might be able buy land "at prices below the market value for irrigated lands" depending on the outcome of the underlying litigation); *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135–36 (1966) (allowing intervention by gas company into an antitrust dispute between the government and the company's supplier because that dispute would affect its access to product). Our own cases applying *NOPSI* have not imposed anything approaching the broad bar Wal-Mart advances. Those cases have instead suggested that an economic interest is not sufficiently direct when the intervenor's interest will only be vindicated by a separate legal action[4] or, as in *NOPSI*, when the intervenor's relationship is too removed from the dispute. After *NOPSI*, we have continued to hold that economic interests can justify intervention when they are directly related to

---

[4] *See, e.g.*, *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) (citing *NOPSI* to allow intervention by insurer into lawsuit against insured because insurer's interest was not "contingent on the outcome of a subsequent lawsuit"); *SEC v. Funding Res. Grp.*, 233 F.3d 575, *4 n.9 (5th Cir. 2000) (citing *NOPSI* to deny intervention to victims of a Ponzi scheme that may become insolvent due to litigation); *SEC v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379, 381–82 (5th Cir. 2011) (citing *NOPSI* to deny intervention to potential creditor because interest "relate solely to the [defendant's] ability to satisfy a judgment for claims that are not related to the case").

the litigation. *Espy*, 18 F.3d at 1207 (allowing intervention by lumber companies whose income may be affected by changes in federal land management policy).

Our holding in *NOPSI* also dealt with a purely private dispute. Two publicly-traded corporations—a supplier of natural gas and an energy company that purchased the supplier's gas—disagreed about the interpretation of a contract. 732 F.2d at 454. *NOPSI* expressly did not involve any state or federal regulations governing the market for gas sales. *Id.* at 456 n.3. A class of electrical customers including the mayor and city of New Orleans[5] sought to intervene in the case, arguing that they were third-party beneficiaries of the disputed contract. The court held against the intervenors because it concluded they were not the real party in interest—the rights they asserted were actually NOPSI's rights and the contract was not actually a third-party beneficiary contract entitling them to assert their own rights.[6] *Id.* at 464–65.

---

[5] The mayor and city intervened in their private capacities as electrical customers. At the time *NOPSI* was decided, the city had no regulatory authority over electricity sales in New Orleans. *Id.* at 462.

[6] Wal-Mart puts great weight on *NOPSI*'s declaration that the intervenor's had only an "economic interest" in the lawsuit. *Id.* at 470. Properly put in context, this language in *NOPSI* actually strengthens the Association's claim. We held that the *NOPSI* intervenors' interest was insufficient not because it was economic but because it could not be directly tied to the contract dispute between NOPSI and its supplier. *Id.* ("The risk of economic harm to the City essentially arises from the regulatory 'gap' which generally leaves NOPSI free to contract as it wishes."). All of the interests they asserted were derivative of NOPSI's contractual rights. *Id.* The Association, by contrast, asserts its own interest—its exclusive enjoyment of a legally protected market

There is no regulatory gap in the present lawsuit—there is a directly and tightly regulated market that will be significantly disrupted if Wal-Mart prevails. The NOPSI intervenors were merely private consumers arguing that a private contract dispute might change the price of a commodity they purchased. In the instant case, the underlying lawsuit attacks not a private contract but a comprehensive system of state law and the intervenors are threatened not with a minor change but with the threatened end of their viability.

No. 16-50041

We conclude our "interest" analysis where we began. *NOPSI* and our subsequent cases insist that the core of our interest analysis asks whether an interest is "legally protectable." *NOPSI*, 732 F.2d at 463–64. Often, this is a tautological exercise—a party may intervene if its interest is legally protectable and its interest is legally protectable if it can intervene—but in the case at bar we need not speculate. *Cooper* strongly suggests that the Association can legally protect its interest in defending the regulatory scheme. 732 F.2d at 464–465; *see also LULAC* 659 F.3d at 434 n.17. Our independent analysis confirms that, even absent *Cooper*, the Association has a legally protectable interest as the intended beneficiary of a government regulatory system.

Having concluded that the Association has an interest that may be impaired by the present lawsuit, we are also satisfied it has met its minimal burden to demonstrate inadequate representation. Because intervention necessarily occurs before the litigation has been resolved, the Association need only show that "the representation *may* be inadequate." *Texas*, 805 F.3d at 662. The Association has satisfied its "minimal" burden to establish that its interest is not adequately represented. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). Our jurisprudence imposes two presumptions of adequate representation, "when 'the would-be intervenor has the same ultimate objective as a party to the lawsuit' [and] 'when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor].'" *Texas*, 805 F.3d at 661–62 (quoting *Edwards*, 78 F.3d at 1005) (first alteration added). Even assuming, *arguendo*, that either of the two presumptions of adequate representation applies, the Association has shown "adversity of interest" and "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]."

9

No. 16-50041

*Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005).[7] The Association has offered several reasons that the Commission's representation may be inadequate. The Commission seeks to defend all portions of the litigation, which limits the range of arguments it can advance, while the Association does not seek to defend the Hotel Exception.[8] The Association intends to seek a declaratory judgment that the regulatory scheme is constitutionally valid; the Commission merely seeks to defend the present suit and would accept a procedural victory. The Association argues that its interests—protecting its members' businesses—are narrower than the Commission's broad public mission. It highlights arguments that the Commission cannot make given the differences in the objectives of the Commission and the Association.[9] Given the broad policy favoring intervention in our precedent, we are satisfied that the Association has demonstrated that it may be inadequately represented in the lawsuit.

## III.

Because we conclude that the Association is entitled to intervention as of right, we do not address the district court's denial of permissive intervention. Because the Association has a protectable interest that may be impaired or injured by the outcome of the lawsuit between Wal-Mart and the Commission

---

[7] After the district court denied the present motion, we clarified that the government-representative presumption does not inherently apply whenever a state or federal agency is a party. *See Entergy Gulf States of La., L.L.C. v. EPA*, 817 F.3d 198 (5th Cir. 2016).

[8] The hotel exception allows hotels owned by publicly traded corporations to hold liquor permits. Tex. Alco. Bev. Code § 22.16. All other publicly traded corporations are prohibited from owning liquor permits. *Id.*

[9] *Cf. Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 539 (1972) ("[T]he Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member."); *Texas*, 805 F.3d at 663 (Jane Does' personal interests are narrower than those of the federal government); *Brumfield*, 749 F.3d at 346 (Louisiana had broader interest in maintaining "its relationship with the federal government" not shared by intervenors); *Espy*, 18 F.3d at 1207 ("The government must represent the broad public interest, not just the economic concerns of the timber industry.").

No. 16-50041

and because the Association has shown that the Commission may not adequately represent its interests, we REVERSE the district court's denial of the Association's motion to intervene.