# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2022

Lyle W. Cayce
Clerk

No. 22-30166

URSULA NEWELL-DAVIS; SIVAD HOME AND COMMUNITY
SERVICES, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

COURTNEY N. PHILLIPS, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE LOUISIANA DEPARTMENT OF HEALTH;
JULIE FOSTER HAGAN, IN HER OFFICIAL CAPACITY AS
ASSISTANT SECRETARY OF THE LOUISIANA DEPARTMENT OF
HEALTH'S OFFICE FOR CITIZENS WITH DEVELOPMENTAL
DISABILITIES; FACILITY NEED REVIEW PROGRAM MANAGER OF
THE LOUISIANA DEPARTMENT OF HEALTH; RUTH JOHNSON, IN
HER OFFICIAL CAPACITY AS UNDERSECRETARY OF THE
LOUISIANA DEPARTMENT OF HEALTH; TASHEKA DUKES, IN
HER OFFICIAL CAPACITY AS HEALTH STANDARDS SECTION
DIRECTOR OF THE LOUISIANA DEPARTMENT OF HEALTH,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-49

Before KING, STEWART, and HAYNES, *Circuit Judges*.

No. 22-30166

Carl E. Stewart, *Circuit Judge*:

Ursula Newell-Davis ("Newell-Davis") and Sivad Home and Community, LLC (collectively "Sivad-Home") appeal the district court's grant of a motion to dismiss and motion for summary judgment for the State after Newell-Davis alleged numerous state and federal constitutional violations in connection with the State's Facility Need Review program ("FNR" or "FNR program"). Because the FNR program survives rational basis review and the Supreme Court has foreclosed Sivad-Home's Privileges or Immunities Clause claim, we AFFIRM.

## I. Facts & Procedural History

### A. *Respite Care Licensing & Pre-Litigation Events*

Louisiana law forbids individuals from offering respite care services[1] without first obtaining a license from the Louisiana Department of Health ("LDH"). *See* La. Rev. Stat. § 40:2120.6. Before LDH conducts its official review of a potential respite care business, it requires each prospective business to apply to its FNR program. The FNR program permits LDH to first "determine if there is a need for an additional [respite care] provider in the geographic location for which the application is submitted." La. Admin. Code tit. 48 § 12523(C)(1). Businesses move past FNR if they can establish "the probability of serious, adverse consequences to recipients' ability to access health care if the provider is not allowed to be licensed." *Id.* at 12423(C)(2). A committee of four members reviews FNR applications every two weeks and works closely with local governments to stay apprised of pending needs in each respective locality.

---

[1] *See* La. Admin. Code tit. 48 § 5003 (defining "respite care" as "an intermittent service designed to provide temporary relief to unpaid, informal caregivers of the elderly and/or persons with disabilities").

No. 22-30166

Newell-Davis is an entrepreneur and licensed social worker in New Orleans. As the mother of a special needs child, she has an intimate understanding of the demand for respite care services. At the request of members of her community, she created Sivad Home and Community Services, LLC with the intention of using her education and expertise to offer additional respite care services in New Orleans. She sought to license her business in accordance with state law and submitted an FNR application to LDH. Without evaluating her qualifications, LDH denied Sivad-Home's application solely because it did not believe another respite care business was necessary in New Orleans. Dissatisfied with her denial, she sued Courtney Phillips—in her official capacity as Secretary of LDH—and various other state entities (collectively the "State") in federal district court.

### B.    District Court Proceedings

At the district court, Sivad-Home brought facial and as-applied constitutional challenges to the FNR program under both federal and state due process and equal protection clauses. She also brought a challenge under the Fourteenth Amendment's Privilege or Immunities Clause. Specifically, she contended that FNR: (1) treated her "differently than others similarly situated without serving any legitimate government interest"; (2) drew "arbitrary and irrational distinction[s] between respite care providers who may legally provide care and those who may not"; and (3) interfered with citizens' "right to earn a living in a chosen profession free from unreasonable government interference."

In response to Sivad-Home's suit, LDH filed a Rule 12(b)(6) motion to dismiss. LDH argued that that FNR is essentially an economic regulation and, thus, subject to rational basis scrutiny, which FNR easily passed. The district court granted LDH's motion on the Privileges or Immunities clause issue, holding that the clause only protects "uniquely federal rights," and

that "the right to earn a living in a lawful occupation of one's choice" was not "a uniquely federal right." The district court, however, allowed Sivad-Home's equal protection, substantive due process, and state law claims to survive.

After discovery, both parties filed cross-motions for summary judgment. First, the district court analyzed Sivad-Home's substantive due process and equal protection claims, concluding that both were "governed by the rational basis standard." The district court reasoned "that FNR [was] rationally related to the legitimate interest of enhancing consumer welfare" because it allowed LDH "to prioritize [] post-licensure compliance surveys that ensure client health, safety and welfare, over the resource intensive and costly initial licensing surveys." Therefore, it held that Sivad-Home did not meet her "heavy burden to negative every conceivable basis which might support FNR."

Second, the district court addressed Sivad-Home's state law claims, noting that "Louisiana's due process guarantee does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Accordingly, it held that her "state law due process claim failed for the same reason" as her federal claim. It also ruled against her state equal protection clause claim, holding that she failed to show "that FNR does not suitably further an appropriate state interest." Ultimately, it granted LDH's motion for summary judgment on all three remaining issues. Sivad-Home timely appealed.

On appeal, Sivad-Home asks this court to reconsider her: (1) due process and equal protection claims under the Fourteenth Amendment of the United States Constitution; (2) due process and equal protection claims under Louisiana law; and (3) privileges or immunities claim under the Fourteenth Amendment of the United States Constitution.

## II.   Standard of Review

### A.   *Due Process and Equal Protection Claims*

Because these claims are before us "on cross motions for summary judgment, we review the district court's rulings de novo and construe all evidence and inferences in favor of the non-moving parties." *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018). We also "examine each party's motion independently." *Balfour Beatty Constr., LLC v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020) (internal quotations omitted). Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. Nature's Way Marine, LLC*, 904 F.3d 416, 419 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). We may affirm the district court's grant of summary judgment "for any reason raised to the district court and supported by the record, and we are not bound by the grounds articulated by the district court." *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 614 (5th Cir. 2017).

### B.   *Privileges or Immunities Clause Claim*

We likewise review "a district court's decision on a Rule 12(b)(6) motion de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). We confine our analysis to "the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). "To avoid dismissal, a plaintiff must plead sufficient 'facts to state a claim to relief that is plausible on its face.'" *Ferguson*, 802 F.3d at 780 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III.    DISCUSSION

#### A.    *Federal & State Equal Protection Clause Claims*

##### 1.    *Federal Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny . . . to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. It "essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988). To succeed on an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently" under the disputed statute. *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017). We then determine what level of scrutiny applies, which depends on whether a protected class or fundamental right is implicated. *Id.* Where the alleged violation is not predicated on a protected class or fundamental right, we apply rational basis review. *See Glass v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018). "Under that standard, a legislative classification must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 244–45; *see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (noting that the Supreme Court does not require "a legislature to articulate its reasons for enacting a statute [because] it is entirely irrelevant for constitutional purposes whether the conceived reasons for the challenged distinction actually motivated the legislature"). Plaintiffs bear the heavy burden of negating "every conceivable basis which might support" the legislative classification. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973).

"Rational-basis review is guided by the principle that we don't have a license to judge the wisdom, fairness, or logic of legislative choices." *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020). So, when "economic

No. 22-30166

legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). While we acknowledge that "rational-basis review gives broad discretion to legislatures," we have "made clear that 'rational' still must be actually rational, not a matter of fiction." *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020) (citing *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013)).

Turning to the merits, we now ask: (1) whether Sivad-Home alleges that the FNR program treats similarly situated businesses differently, and (2) what level of scrutiny controls our analysis. Regarding the first prong, the State concedes that Sivad-Home receives different treatment compared to similarly situated respite care services under the FNR program. With the first prong satisfied, we move on to identifying the correct level of scrutiny with which to analyze her constitutional allegations. Because her claims do not implicate a protected class or violation of a fundamental right, we proceed under rational basis review.[2] So, while we endeavor to "hypothesize a legitimate purpose to support" the FNR program, *Mahone*, 836 F.2d at 934, Sivad-Home must "negative every conceivable basis which might support" the program. *Lehnhausen*, 410 U.S. at 364.

Here, the FNR program survives rational basis review because it advances the State's legitimate interest in enhancing consumer welfare. LDH offers many legitimate reasons for its FNR regime. Of those reasons, Sivad-Home has the most difficulty defeating the contention that LDH uses

---

[2] Sivad-Home seemingly contends that LDH violated her fundamental right to work and earn a living in a profession of her choice. As we later explain, *infra* Part III.2.C, she cannot sustain this argument in light of Supreme Court precedent.

the FNR program to advance its legitimate interest of enhancing consumer welfare, and not purely for economic protectionism.[3] Sivad-Home aptly points out that the Supreme Court has distinguished between the permissible enhancing of consumer welfare and impermissible "pure economic protectionism." *Hines*, 982 F.3d at 274 (citing *St. Joseph Abbey*, 712 F.3d at 222–23). She contends that her expert witness, Dr. Matthew Mitchell, demonstrated that the State almost certainly enacted the FNR program with an eye towards economic protectionism. Specifically, she highlights that Dr. Mitchell noted that it is at least "possible" that FNR was "passed as a pretext for economic protectionism." However, through her experts or otherwise, Sivad-Home fails to rebut that this court permits the State to be "motivated in part by economic protectionism" and still survive rational basis review. *See Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Houston*, 660 F.3d 235, 240 (5th Cir. 2011) (holding that even if the city of Houston was "motivated in part by economic protectionism, there is no real dispute that promoting full-service taxi operations is a legitimate government purpose under the rational basis test").

At best, economic protectionism is an incidental result of the FNR program. The record supports the State's assertions that FNR permits enhancement of consumer welfare by "allowing [LDH] to prioritize post-licensure compliance surveys that ensure client health, safety and welfare, over the resource intensive and costly initial licensing surveys." For example, by limiting the number of providers in the respite care business, the State can focus its resources on a manageable number of providers, which aid

---

[3] *See Cooper v. Tex. Alcoholic Beverage Com'n*, 820 F.3d 730, 741 (5th Cir. 2016) (defining economic protectionism as "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors").

it in ensuring that consumers receive the best possible care in their communities.

We acknowledge the uphill battle that plagues newcomers, like Sivad-Home, to the Louisiana respite care industry, but that is not enough to hold the FNR regime unconstitutional under rational basis review. Because Sivad-Home fails to negate "every conceivable basis which might support" the FNR program, we hold in favor of the State. *Lehnhausen*, 410 U.S. at 364.

### 2. State Equal Protection Claim

The Louisiana Supreme Court has interpreted Article I, Section 3 of the Louisiana Constitution as follows:

> Article I, Section 3 commands [Louisiana courts] to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

*Sibley v. Bd. of Sup'rs of La. State Univ.*, 477 So.2d 1094, 1107 (La. 1985); LA CONST. art. 1, § 3. In comparison to the Fourteenth Amendment's Equal Protection Clause, the Louisiana Supreme Court has recognized that the state's version moved Louisiana "from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment." *Id.* at 1108.

No. 22-30166

Sivad-Home contends that the district court erred in applying the deferential "suitably further" standard in this case. She argues that heightened scrutiny should control our analysis because FNR impermissibly burdens disabled persons. She relies on *Clark v. Manuel* to support her argument. 463 So.2d 1276 (La. 1985). In that case, the Louisiana Supreme Court held that a statute requiring individuals to seek licensing to open community homes for the mentally-disabled violated the Louisiana Constitution's equal protection clause. The court relied on Fifth Circuit precedent to reason that a middle-tier level of scrutiny applied to statutes "which affect[ed] the mentally [disabled]." *Id.* at 1284 (citing *Cleburne Living Ctr. v. City of Cleburne*, 726 F.2d 191 (5th Cir. 1984)). It ultimately held that the challenged ordinance was unconstitutional because it made it more difficult for a quasi-protected class to enjoy "an important right." *Id.* at 1285. Sivad-Home asserts that *Clark* is analogous to her situation. Specifically, she contends that FNR harms the disabled community by arbitrarily limiting additional respite care businesses when there is a need. She also argues that the district court erred in concluding that she lacked standing to represent the disabled persons in her community, and that that decision contributed to the district court incorrectly determining the tier of scrutiny that applied.[4]

The standard under Louisiana law looks not to a law's impact, but to what the "law classifies." *See Sibley*, 477 So.2d at 1107 (internal quotation omitted). Applied here, the FNR program is only aimed at controlling the number of respite service care providers in Louisiana. FNR does not explicitly mention any directives to the disabled communities to control which providers they might select. Instead, it is singularly focused on ensuring the State's control over the number of respite care providers at any

---

[4] In light of the ultimate holding and rationale in reaching our final disposition, we pretermit the issue of standing and continue to the merits of Sivad-Home's case.

given moment. Therefore, by its terms, the law only applies to Louisiana's respite care providers. While Sivad-Home may be correct in her assertion that FNR indirectly burdens the disabled community, she offers no evidence that the program does so directly. Accordingly, we must apply the "suitably further" standard to her Louisiana equal protection argument—the result of which is the same as our previous Equal Protection Clause analysis. *See supra*, Part III.A.1.

Sivad-Home also mischaracterizes what constitutes a quasi-protected class in her reliance on *Clark*. That case premised its decision that disabled persons were entitled to heightened scrutiny on a Fifth Circuit case that was later overruled by the Supreme Court. *See City of Cleburne. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ("*Cleburne II*"). In *Cleburne II*, the Supreme Court expressly rejected this court's determination that statutes burdening disabled persons demand heightened scrutiny. *Id.* at 442 (holding that "we conclude for several reasons that [this court] erred in holding [the] mental[ly] [disabled] as a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation"). Because disabled persons are not a quasi-suspect class, and we need not reach the issue of the elderly because the record does not suggest that Sivad-Home is attempting to form a respite organization for that group, her state equal protection claims fail. *See Cleburne II*, 473 U.S. 432.

### B.     Federal & State Due Process Clause Claims

The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV. Article I, § 2 of the Louisiana Constitution similarly provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." LA Const. art. 1, § 2. Due process claims that do not involve a fundamental right are

No. 22-30166

subject to rational basis review. *See Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 561 (5th Cir. 2017) (holding that rational basis review is "the default for substantive due process claims that do not implicate a fundamental right"); *see also supra*, Part III.A.1 (discussing the rational basis review standard). "Unlike Louisiana's provision on equal protection which is distinct from that provided in the Fourteenth Amendment, [the] due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment." *Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La. 1998).

### 1.    *Federal Due Process Claim*

Sivad-Home contends that FNR violated her "right to earn a living in a chosen profession free from unreasonable government interference." We take no stance on whether such a right is cognizable under the Due Process Clause and instead note that, if it is, both parties concede that rational basis review controls our analysis. We have already determined that the FNR program withstands rational basis review. *See supra*, Part III.A.1. Therefore, we hold in favor of the State on this issue.

### 2.    *State Due Process Claim*

For the first time on appeal, Sivad-Home argues that Louisiana law demands a stricter due process analysis because Louisiana has previously recognized that the right to earn a living in a profession of one's choice is fundamental. However, we have repeatedly held that parties "forfeit[] an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal." *Thomas v. Ameritas Life Ins. Corp.*, 34

F.4th 395, 402 (5th Cir. 2022).[5] Accordingly, we decline to reach this argument.

### C.     *Privileges or Immunities Clause Claim*

As Sivad-Home concedes, the Privileges or Immunities Clause protects a finite list of "uniquely federal rights," none of which she claims have been violated in this case. *Deubert*, 820 F.2d at 760. Accordingly, we decline to address her argument on this issue.

## IV.    CONCLUSION

For the foregoing reasons we AFFIRM the judgment of the district court.

---

[5] *See Thomas*, 34 F.4th at 492 (explaining that "to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, [but] a litigant must also press and not merely intimate the argument during proceedings before the district court.") (internal quotations and citation omitted).